680 S.E.2d 77

**Josephine MORGAN, Plaintiff Below, Appellee,**

v.

**FORD MOTOR COMPANY, a Delaware corporation; Bridgestone/Firestone, Inc., an Ohio corporation; and Francis Robert Morgan, Defendants Below, Appellees,**

**and**

**Michelle Archuleta, as Personal Representative of The Estate of Robert Francis Morgan, Cross–Claim Plaintiff Below, Appellant,**

v.

**Ford Motor Company, a Delaware corporation, Cross–Claim Defendant Below, Appellee.**

No. 34139.

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2009.

Decided June 18, 2009.

Scott S. Segal, Esq., Victor S. Woods, Esq., The Segal Law Firm, Charleston, for the Appellant.

Michael Bonasso, Esq., Alonzo D. Washington, Esq., Flaherty, Sensabaugh & Bonasso, P.L.L.C., Charleston, Bryan D. Cross, Esq., Wheeler Trigg Kennedy, LLP, Denver, CO, for Appellee Ford Motor Company.

Stephanie D. Taylor, Esq., Jones Day, Pittsburgh, PA, for amicus curiae Product Liability Advisory Council, Inc.

KETCHUM, Justice:

In this appeal from the Circuit Court of Kanawha County, we are asked to consider whether a plaintiff's state cause of action

against a motor vehicle manufacturer is preempted by federal law. The plaintiff was injured in a motor vehicle roll-over accident, in part, because the side-window glass shattered and allowed the plaintiff's arm to exit the vehicle and be pinned between the vehicle and the pavement. The plaintiff contends that his vehicle was defective because the manufacturer used tempered glass in the side-door windows instead of stronger laminated glass.

Upon a motion from the defendant manufacturer, the circuit court granted summary judgment and dismissed the plaintiff's glass defect claims. The circuit court concluded that the plaintiff's glass defect claims were preempted by Federal Motor Vehicle Safety Standard 205, a regulation that permits motor vehicle manufacturers options in choosing side-window materials.

After carefully reviewing the record, the briefs and arguments of the parties, and the federal legal authorities on this question, we feel compelled to find that the circuit court's decision was correct. As set forth below, we hold that the plaintiff's side-window glass defect claims are preempted by federal law, and affirm the circuit court's summary judgment order entered in favor of the vehicle manufacturer.

## I.

### Facts and Background

On January 30, 2001, appellant Francis Robert Morgan ("Mr.Morgan") was driving a 1999 Ford Expedition south on Interstate 79 in Braxton County, West Virginia. The vehicle rolled over, and Mr. Morgan's left hand and left arm were ejected through the broken tempered glass of the driver's side-door window and pinched between the ground and the exterior of the door panel. Mr. Morgan suffered a severe degloving injury to his left arm and hand as a result.

Mr. Morgan's wife, Josephine Morgan, was sitting in the second row of the vehicle and was injured in the rollover. Mrs. Morgan filed the underlying action in this case on January 27, 2003, naming her husband and appellee Ford Motor Company ("Ford") as party defendants. Mr. Morgan answered the complaint on January 31, 2003, and asserted cross claims against Ford that included, *inter alia*, causes of action for strict liability, negligence, breach of warranty, fraudulent omission, and intentional infliction of emotional distress.[1]

Mr. Morgan's causes of action against Ford relate to the crashworthiness of the 1999 Ford Expedition vehicle, and are predicated on Ford's installation of tempered glass in the side windows of the vehicle. Mr. Morgan's expert, Thomas J. Feaheny, issued a report indicating that the 1999 Ford Expedition was defective and unreasonably dangerous in its design because of the tempered glass. It was Mr. Feaheny's opinion that laminated glass, or some other ejection-resistant side-window glass or glazing—which was technologically and economically feasible— should have been used, and would have prevented the ejection of Mr. Morgan's arm through the driver's side window.[2]

Another expert retained by Mr. Morgan, Paul Lewis, Jr., was a biomechanics specialist. Like Mr. Feaheny, Mr. Lewis was of the opinion that Mr. Morgan would not have

---

1. Mr. Morgan also asserted cross claims against Bridgestone/Firestone, Inc.; those claims were later voluntarily dismissed. Mrs. Morgan also named Bridgestone/Firestone, Inc., as a defendant. Mrs. Morgan subsequently resolved all of her claims related to the subject rollover.

2. Tempered glass and laminated glass are defined as follows:

The term "tempered glass" means a single piece of specially treated sheet, plate, or float glass possessing mechanical strength substantially higher than annealed glass. When broken at any point, the entire piece breaks into small pieces that have relatively dull edges as compared to those of broken pieces of annealed glass. (Other terms such as "heat treated glass," "toughened glass," "case hardened glass," and "chemically tempered glass" are used also).

The term "laminated glass" means two or more pieces of sheet, plate, or float glass bonded together by an intervening layer or layers of plastic material. It will crack or break under sufficient impact, but the pieces of glass tend to adhere to the plastic. If a hole is produced, the edges are likely to be less jagged than would be the case with ordinary annealed glass.

"1.6. Laminated Glass," and "1.21. Tempered Glass," *American National Standard for Safety Glazing Materials*, ANSI/SAE Z26.1–1996 at 1–2.

suffered the degloving injury had the glass in the vehicle's window prevented his arm from exiting the confines of the vehicle during the rollover.

On June 26, 2007, Ford filed a motion for summary judgment pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure* asserting, among other things, that Mr. Morgan's glass-defect claims were preempted by federal law. Ford contended that Mr. Morgan's state law side-window-glass defect claims were impliedly preempted by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101, *et seq.* ("the Safety Act"), and its implementing regulation pertaining to glass/glazing, Federal Motor Vehicle Safety Standard 205 ("FMVSS 205").

In an order filed September 17, 2007, the circuit court granted Ford's motion for summary judgment. The circuit court found that the appellant's "claim of a glass/glazing defect in the subject vehicle relates solely to the choice of tempered glass over other permitted options, and not to any application or specific design or manufacturing defect in the glass/glazing present in the subject vehicle." The circuit court further found that FMVSS 205 "permits a motor vehicle manufacturer to use one of several options for the materials in side and rear windows, including glass-plastic, laminates, and tempered glass" and found that Ford had used one those optional glazing materials, tempered glass, in the side windows of the subject 1999 Ford Explorer.

In its order, the circuit court looked to the United States Supreme Court's interpretation of the Safety Act in *Geier v. American Honda Motor Co., Inc.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). In *Geier* the plaintiff asserted that her vehicle was defective because the vehicle's manufacturer failed to equip it with airbags. The manufacturer—relying upon a list of safety options in the then-effective variant of FMVSS 208— chose to equip the vehicle with only seatbelts. The U.S. Supreme Court ruled that because FMVSS 208 deliberately provided manufacturers with a range of choices among different passive restraint devices (including seatbelts and airbags), the plaintiff's defect suit was pre-empted. The circuit court interpreted the *Geier* decision to mean that because

FMVSS 208 was deliberately designed to provide manufacturers with safety options, a state court defect action that might compel a manufacturer to choose one of those safety options over the others available under the regulation frustrated the federal scheme and was, therefore, impliedly preempted by the federal regulation.

Applying this interpretation of FMVSS 208 in *Geier* to FMVSS 205 in the case below, the circuit court below determined that:

> [B]ecause tempered glass is a permitted option for manufacturers to use in vehicle side windows under FMVSS 205, the imposition of state tort liability based on the exercise of such option would frustrate the full purposes and objectives of Congress.

The circuit court therefore concluded that the appellant's glass/glazing defect claim was preempted by federal law, and entered judgment for appellee Ford.

The appellant, Mr. Morgan, now appeals the circuit court's September 17, 2007 summary judgment order.

## II.

### Standard of Review

█ " 'Preemption is a question of law reviewed *de novo.*' *Hartley Marine Corp. v. Mierke,* 196 W.Va. 669, 673, 474 S.E.2d 599, 603 (1996), *citing Kollar v. United Transportation Union,* 83 F.3d 124, 125 (5th Cir. 1996)." Syllabus Point 2, *Lontz v. Tharp,* 220 W.Va. 282, 647 S.E.2d 718 (2007) (*per curiam* ).

## III.

### Discussion

The sole issue raised in this appeal is whether the circuit court erred in its conclusion that appellant Mr. Morgan's side-window glass and glazing defect claims are preempted by FMVSS 205. Before turning to the parties' arguments, we first discuss the basic parameters of preemption jurisprudence.

## A. Fundamental Preemption Guidelines

■ The preemption doctrine has its origin in the Supremacy Clause of the United States *Constitution*, which states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

*U.S. Const.*, Art. VI, cl. 2. As interpreted by Chief Justice John Marshall, the expounder of the *Constitution*,[3] state laws are invalid and preempted under the Supremacy Clause if they "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution[.]" *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824).

■ This Court has therefore interpreted the preemption doctrine to mean that "[t]he Supremacy Clause of the United States Constitution, Article VI, Clause 2, invalidates state laws that interfere with or are contrary to federal law." Syllabus Point 1, *Cutright v. Metropolitan Life Ins. Co.*, 201 W.Va. 50, 491 S.E.2d 308 (1997).

■ Nevertheless, our law has a bias against preemption. Preemption of topics traditionally regulated by states—like health and safety—is greatly disfavored in the absence of convincing evidence that Congress intended for a federal law to displace a state law.[4] Put succinctly, preemption is disfavored in the absence of exceptionally persuasive reasons warranting its application:

> As we have frequently indicated, "[p]reemption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no

**3.** Of John Marshall, Joseph Story said, "His proudest epitaph may be written in a single line—'Here lies the expounder of the Constitution.'" Jean Edward Smith, *John Marshall: Definer of a Nation* xi (Macmillan, 1998).

**4.** *General Motors Corp. v. Smith*, 216 W.Va. 78, 83, 602 S.E.2d 521, 526 (2004) (*per curiam*) ("Our law has a general bias against preemption."); *In re: West Virginia Asbestos Litigation*, 215 W.Va. 39, 42, 592 S.E.2d 818, 821 (2003) ("[B]oth this Court and the U.S. Supreme Court have explained that federal preemption of state court authority is generally the exception, and not the rule."); *State ex rel. Orlofske v. City of Wheeling*, 212 W.Va. 538, 543, 575 S.E.2d 148, 153 (2002), *quoting Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."); *Hartley Marine Corp. v. Mierke*, 196 W.Va. 669, 673, 474 S.E.2d 599, 603 (1996) ("preemption is disfavored in the absence of convincing evidence warranting its application."). *See also*, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700, 715 (1996) ("Congress does not cavalierly pre-empt state-law causes of action."); *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) ("Given the importance of federalism in our constitutional structure . . . we entertain a strong presumption that federal statutes do not preempt state laws; particularly those laws directed at subjects-like health and safety-'traditionally governed' by the states."); *Law v. General Motors Corp.*, 114 F.3d 908, 910 (9th Cir.1997), *quoting Easterwood, id.* ("pre-

emption will not lie unless it is 'the clear and manifest purpose of Congress.'"); *FMC Corp. v. Holliday*, 498 U.S. 52, 62, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (there is a "presumption that Congress does not intend to preempt areas of traditional state regulation.").

There is a long line of cases where this Court has guarded against unnecessary federal preemption of our state's right to provide a remedy for wrongful acts. *See, e.g.*, *In Re: West Virginia Asbestos Litigation*, 215 W.Va. 39, 592 S.E.2d 818 (2003) (preemption the exception, not the rule); Syllabus Point 3, *State ex rel. Orlofske v. City of Wheeling*, 212 W.Va. 538, 575 S.E.2d 148 (2002) (West Virginia state courts have subject matter jurisdiction over federal preemption defenses); *Chevy Chase Bank v. McCamant*, 204 W.Va. 295, 512 S.E.2d 217 (1998), *citing FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (addressing the issue of whether the West Virginia Consumer Credit and Protection Act was preempted by the federal Fair Debt Collections Practices Act, holding that there is a strong presumption that Congress does not intend to preempt areas of traditional state regulation); *Martin Oil Co. v. Philadelphia Life Ins. Co.*, 203 W.Va. 266, 507 S.E.2d 367 (1997) (state law actions having incidental involvement or referral to ERISA plans do not present risk of conflicting or inconsistent state law application and are not preempted); *Hartley Marine Corp. v. Mierke*, 196 W.Va. 669, 474 S.E.2d 599 (1996), *cert denied sub nom, Hartley Marine Corp. v. Paige*, 519 U.S. 1108, 117 S.Ct. 942, 136 L.Ed.2d 832 (1997) (preemption is disfavored in the absence of convincing evidence warranting its application).

other conclusion, or that the Congress has unmistakably so ordained.' " *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 634, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981) (*quoting Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981), *quoting Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)).

■■■ When it is argued that a state law is preempted by a federal law, the focus of analysis is upon congressional intent.[5] Preemption "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). The task presented for a court when a federal preemption defense is raised "is to determine whether state regulation is consistent with the structure and purpose of the statute [or federal regulation] as a whole." *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992); *accord Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *see also FMC Corp. v. Holliday,* 498 U.S. 52, 56–57, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

■■■ Although "there can be no one crystal clear distinctly marked formula" for determining whether a state statute is preempted[6] the United States Supreme Court has identified two ways in which preemption may be accomplished: expressly or impliedly.[7]

■■■ To establish a case of express preemption requires proof that Congress, through specific and plain language, acted within constitutional limits and explicitly intended to preempt the specific field covered by state law. *See Hillsborough County, Fla. v. Automated Medical Labs., Inc.,* 471 U.S. 707, 715–16, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (noting that the presumption against preemption governs unless preemption " 'was the clear and manifest purpose of Congress' ") (*quoting Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

■■■ There are two recognized types of implied preemption: field preemption and conflict preemption. Implied field preemption occurs where the scheme of federal regulation is so pervasive that it is reasonable to infer that Congress left no room for the states to supplement it. Implied conflict preemption occurs where compliance with both federal and state regulations is physically impossible, or where the state regulation is an obstacle to the accomplishment or execution of congressional objectives.[8] To prevail

---

5. *Hartley Marine Corp. v. Mierke,* 196 W.Va. 669, 674, 474 S.E.2d 599, 604 (1996) (In any preemption analysis, the focus of the inquiry is on congressional intent.); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) *quoting Malone v. White Motor Corp.,* 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978), *quoting Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963) (" '[t]he purpose of Congress is the ultimate touchstone' of preemption analysis.' ").

6. *Hines v. Davidowitz,* 312 U.S. at 67, 61 S.Ct. 399.

7. *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. at 98, 112 S.Ct. 2374; *Jones v. Rath Packing Co.,* 430 U.S. at 525, 97 S.Ct. 1305.

8. The United States Supreme Court differentiated these prototypes in *Gade,* 505 U.S. at 98, 112

S.Ct. 2374 (citations and quotation marks omitted):

> [F]ield pre-emption[ ] [occurs] where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption[ ] [occurs] where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]

The Court similarly differentiated between implied forms of pre-emption in *Northwest Cent. Pipeline Corp. v. Kansas Corp. Comm'n,* 489 U.S. 493, 509, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989), stating:

> In the absence of explicit statutory language signaling an intent to pre-empt, we infer such intent where Congress has legislated comprehensively to occupy an entire field of regula-

on a claim of implied preemption, "evidence of a congressional intent to pre-empt the specific field covered by state law" must be pinpointed. *See Wardair Canada, Inc. v. Florida Dep't of Revenue,* 477 U.S. 1, 6, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986).

■ One final point: the U.S. Supreme Court has recognized that an agency regulation with the force of law can explicitly or implicitly preempt conflicting state regulations. *See, e.g., Geier v. American Honda Motor Co.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000); *Hillsborough County, Fla. v. Automated Medical Labs., Inc.,* 471 U.S. at 713, 105 S.Ct. 2371. In such cases, a court must not rely on mere agency proclamations that the federal regulation preempts state law, but must perform its own conflict determination, relying on the substance of state and federal law. *Wyeth v. Levine,* 555 U.S. ——, —— 129 S.Ct. 1187, 1201, 173 L.Ed.2d 51 (2009).

## B. *The Parties' Arguments on Preemption*

The parties in this case dispute whether West Virginia's general common law on product liability is preempted by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101, *et seq.* ("the Safety Act"), and its implementing regulation pertaining to glass/glazing, Federal Motor Vehicle Safety Standard 205 ("FMVSS 205"). We first address whether these federal enactments explicitly preempt our State's common law action, and then address whether they trump our law under the theory of implied conflict preemption.

### (1) *Express Preemption.*

We first briefly dispense with the question concerning whether the appellant's common-law cause of action is explicitly preempted by the Safety Act or FMVSS 205.

■ The Safety Act requires the National Highway Traffic Safety Administration ("NHTSA") to "prescribe motor vehicle safety standards" that are "practicable, meet the need for motor vehicle safety, ... [and are] stated in objective terms." 49 U.S.C. § 30111(a). The Safety Act defines a "motor vehicle safety standard" as the "minimum standard for motor vehicle or motor vehicle equipment performance." 49 U.S.C. § 30102(a)(9).

■ The Safety Act contains an express preemption provision, which states:

When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical

---

tion, leaving no room for the States to supplement federal law, or where the state law at issue conflicts with federal law, either because it is impossible to comply with both, or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives[.]

(citations omitted).

Implied field pre-emption arises when a federal act impinges on subject matter which a state statute attempts also to regulate, even though there may be no direct contradiction between the enactments. "There is no constitutional rule which compels Congress to occupy the whole field. Congress may circumscribe its regulation and occupy only a limited field. When it does so, state regulation outside that limited field ... is not forbidden or displaced." *Kelly v. State of Washington,* 302 U.S. 1, 10, 58 S.Ct. 87, 82 L.Ed. 3 (1937). The intent to occupy the field is "not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the state." *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960).

Implied conflict preemption occurs "where 'compliance with both federal and state regulations is a physical impossibility,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]' " *Hartley Marine Corp.,* 196 W.Va. at 674, 474 S.E.2d at 604, *citing Gade v. National Solid Wastes Management Ass'n,* 505 U.S. at 98, 112 S.Ct. 2374. A conflict occurs " 'to the extent it ... is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.' " *California v. Federal Energy Regulatory Comm'n,* 495 U.S. 490, 506, 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990) (*quoting Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)). "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

to the standard prescribed under this chapter.

49 U.S.C.A. § 30103(b)(1). Preemption under this provision is not, however, complete. Another portion of the Safety Act—often referred to as the "savings clause"—states:

> Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.

49 U.S.C. § 30103(e). Read together, these two statutes indicate a congressional intent to expressly preempt state-enacted regulations, but to not preempt common law suits that arise even though a manufacturer has complied with a federal regulation establishing a "minimum standard for motor vehicle or motor vehicle equipment performance." 49 U.S.C. § 30102(a)(9). *See Geier v. American Honda Motor Co., Inc.,* 529 U.S. at 867–68, 120 S.Ct. 1913. The savings clause "removes tort actions from the scope of the express pre-emption clause," 529 U.S. at 869, 120 S.Ct. 1913, and "preserves those actions that seek to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor." *Id.,* 529 U.S. at 870, 120 S.Ct. 1913.

The Safety Act therefore does not expressly preempt the appellant's common-law cause of action.

 We also find no language in FMVSS 205 that would indicate a clear expression of congressional intent to preempt common law suits regarding glazing in motor vehicles. Instead, we find agency language suggesting that FMVSS 205 would "not have any substantial direct effects on the States" including "preempt[ing] State law[.]" The final 2003 version of FMVSS 205, as published in the *Federal Register,* was accompanied by the following agency statement:

> Executive Order 13132 requires us to develop an accountable process to ensure "meaningful and timely input by State and local officials in the development of regulatory policies that have federalism implications." "Policies that have federalism

implications" is defined in the Executive Order to include regulations that have "substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government." ... We also may not issue a regulation with Federalism implications and that preempts State law unless we consult with State and local officials early in the process of developing the proposed regulation.

> This final rule will not have any substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government, as specified in Executive Order 13132.

68 F.R. 43964, 43971 (July 25, 2003). Accordingly, it appears that when FMVSS 205 was most recently revised, the NHTSA did not intend to expressly preempt actions arising under state law.

Accordingly, we need consider only whether the appellant's common law action is invalidated under a theory of implied preemption.

### 2. Implied Conflict Preemption.

We are asked by the parties to examine the theory of implied conflict preemption, and whether a state common-law suit regarding a manufacturer's choice of side-window glass materials is an obstacle to the accomplishment or execution of congressional objectives under the Safety Act and FMVSS 205.[9]

Understanding the parties' arguments on implied conflict preemption requires a brief examination of the federal safety regulation at issue. FMVSS 205—which may be found at 49 C.F.R. § 571.205—sets forth various requirements for glazing materials that may be used in motor vehicles. The NHTSA stated three purposes for the regulation, as follows:

> The purpose of this standard is to reduce injuries resulting from impact to glaz-

---

9. The appellee does not assert a field preemption argument, that is, it does not assert that the Safety Act or FMVSS 205 is so comprehensive

that it is reasonable to infer that Congress left no room for the States to supplement it.

ing surfaces, to ensure a necessary degree of transparency in motor vehicle windows for driver visibility, and to minimize the possibility of occupants being thrown through the vehicle windows in collisions. 49 C.F.R. § 571.205 at S2. The regulation does not, however, directly identify the glazing materials approved for use in motor vehicles, but rather incorporates by reference a standard designed by the American National Standards Institute ("ANSI"). The current standard—"American National Standard for Safety Glazing Materials," ANSI/SAE Z26.1–1996 [10]—provides as follows:

Except for special requirements for specified locations, safety glazing materials of seven general types can meet some or all requirements detailed in this standard. All seven types are commercially feasible today. Each of them possesses its own distinctive safety characteristics. The seven types are listed below and are described in Section I.

(1) Laminated Glass

(2) Glass–Plastic Glazing Material

(3) Tempered Glass

(4) Plastic

(5) Multiple Glazed Unit (Class 1 and Class 2)

(6) Bullet–Resistant Glazing

(7) Bullet–Resistant Shield

The standard permits laminated glass to be used throughout a vehicle, while tempered glass can be used anywhere other than in the windshield. *See,* ANSI/SAE Z26.1–1996, T. 1 (Items 1 & 2). The ANSI standards also state that:

One safety glazing material may be superior for protection against one type of haz-

ard, whereas another may be superior against another type … [N]o one type of safety glazing material can be shown to possess the maximum degree of safety under all conditions.

*Id.* at § 2.2.

Appellee Ford argues that our interpretation of the preemptive effect of FMVSS 205 is controlled by the U.S. Supreme Court's decision in *Geier v. American Honda Motor Co., supra.* Ford asserts that the *Geier* decision stands for the proposition that state common-law suits are preempted whenever they would foreclose one of several equipment options authorized by a federal motor vehicle safety standard. Because FMVSS 205 offers manufacturers several options for materials to choose among when installing side windows in vehicles, Ford asserts that a state common-law suit precluding one of those options is implicitly preempted.

The appellant, Mr. Morgan, argues that *Geier* is being given an overbroad interpretation. *Geier,* the appellant argues, was not based on the mere existence of regulatory options. Instead, the *Geier* decision was founded upon extrinsic evidence that demonstrated a federal agency had a detailed plan that would be obstructed by state law. The appellant contends that the evidence in *Geier* showed that the federal agency had adopted an authoritative policy behind the regulations at issue, a policy designed to encourage manufacturers to gradually phase in a mix of optional safety equipment. The availability of options was essential to the success of the federal agency objectives.

Mr. Morgan asserts that under *Geier,* if a federal agency does *not* consider the avail-

10. The complete title of the standard is "American National Standard for Safety Glazing Materials for Glazing Motor Vehicles and Motor Vehicle Equipment Operating on Land Highways—Safety Standard," approved by the American National Standards Institute on August 11, 1997.
In order to procure a copy of the standard, FMVSS 205 states, in part:
A copy of ANSI/SAE Z26.1–1996 may be obtained from the Society of Automotive Engineers, Inc., 400 Commonwealth Drive, Warrendale, PA 15096–0007. A copy of ANSI/SAE Z26.1–1996 may be inspected at NHTSA's technical reference library, 400 Seventh Street,

SW., Room 5109, Washington, DC or at the Office of the Federal Register, 900 North Capitol Street, NW., Suite 700, Washington, DC.
At the time the 1999 Ford Explorer in this case was constructed, FMVSS 205 required conformity with an earlier version of this safety standard, ANSI Z26.1–1977, as supplemented by Z26.1a–1980. *See* 49 Fed.Reg. 6732 (Feb. 23, 1984). For purposes of this appeal, however, there is no substantive difference between these standards, as both laminated and tempered glass have long been included as materials approved for use in vehicle side windows.

ability of a particular option to be essential to its objectives, then a common-law theory foreclosing that option does not stand as an obstacle to the agency's objectives and is not preempted. Mr. Morgan further asserts that there is no evidence of an agency plan, policy, or objective behind FMVSS 205 that would be thwarted by a state cause of action. When the circuit court construed *Geier* to mean that options always preempt a state cause of action to declare one of those options as unsafe, the appellant argues that the congressional intent behind the Safety Act (which permits common law actions and which states that safety standards are, by definition, only a "minimum standard," 49 U.S.C. § 30102(a)(9)) was thwarted.

Overshadowing the parties' arguments are two federal cases issued after the circuit court entered its summary judgment order in the instant case. In the first case, *O'Hara v. General Motors Corp.*, 508 F.3d 753 (5th Cir.2007), a federal appeals court concluded that *Geier* does not apply to an interpretation of FMVSS 205, and, accordingly, that a state common-law suit alleging that the tempered glass in a vehicle was defective was not preempted by federal law. In the second case, *Wyeth v. Levine*, 555 U.S. ——, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009), the U.S. Supreme Court held that explicit regulatory pronouncements by a federal agency that state common-law suits "frustrate the agency's implementation of its statutory mandate" are insufficient to preempt a state common-law suit. In so holding, the Court appears to have expounded upon its decision in *Geier.*

To better understand the parties' positions on implied preemption, we must explore the courts' decisions in *Geier, O'Hara,* and *Wyeth.*

### a. *Geier v. American Honda*

*Geier v. American Honda Motor Co., Inc.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914

(2000) concerned the preemptive effect of the Safety Act and FMVSS 208, a series of standards listing the approved types of passive restraints manufacturers could install inside vehicles. Those passive restraints ranged from types of seat belts to airbags. The plaintiff, Alexis Geier, collided with a tree while driving a 1987 Honda Accord. The plaintiff was restrained by a manual shoulder and lap belt, but was still seriously injured. Because the car was not equipped with airbags, the plaintiff sued American Honda on the tort law theory that the vehicle was negligently and defectively designed. The plaintiff essentially argued that "[a]s far as FMVSS 208 is concerned, the more airbags, and the sooner, the better." 529 U.S. at 874, 120 S.Ct. 1913.

The United States Supreme Court, by a 5–4 majority, concluded that the plaintiff's tort law suit was preempted by FMVSS 208.

First, to determine the objectives of FMVSS 208, the Court examined the statements by the federal agency when FMVSS 208 was being promulgated, and examined the history (starting in 1967) behind the adoption and revision of regulations for passive restraints. 529 U.S. at 875–878, 120 S.Ct. 1913. The "relevant history and background are complex and extensive." 529 U.S. at 883, 120 S.Ct. 1913. The Court noted that NHTSA "had *rejected* a proposed FMVSS 208 'all airbag' standard because of safety concerns (perceived or real) associated with airbags." 529 U.S. at 879, 120 S.Ct. 1913. The agency history showed that NHTSA had sought to encourage manufacturers to adopt a mix of devices to "help develop data on comparative effectiveness" of passive restraint systems, to build public confidence,[11] and to allow the industry time to overcome the safety problems and high production costs associated with airbags. *Id.*

---

11. The Court noted that in 1972, the U.S. Department of Transportation adopted a new policy designed to encourage seatbelt usage. The agency gave new vehicle manufacturers the option to either install passive restraints such as automatic seatbelts or airbags, or to add an "ignition interlock" device that forced occupants to buckle up by preventing the vehicle's ignition from turning on if the seatbelt was unbuckled. Many manufacturers chose the ignition interlock. In 1974, the agency added a requirement that seatbelts also include a continuous warning buzzer to encourage reattachment of the belt. The two devices were so unpopular with the public that Congress passed a law in 1974 that forbade the agency from ever requiring such devices in the future. The agency contended that the disastrous experience with the two devices directly influenced subsequent passive restraint initiatives. 529 U.S. at 875–76, 120 S.Ct. 1913.

Considering this extensive history and record of agency deliberations, the Court found that FMVSS 208

> ... deliberately provided the manufacturer with a range of choices among different passive restraint devices. Those choices would bring about a mix of different devices introduced gradually over time; and FMVSS 208 would thereby lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance—all of which would promote FMVSS 208's safety objectives.

529 U.S. at 875, 120 S.Ct. 1913.

Because FMVSS 208 sought to engender "a gradually developing mix of alternative passive restraint devices," the Court concluded that the tort suit filed by the plaintiff "would stand as an 'obstacle' to the accomplishment of that objective." 529 U.S. at 886, 120 S.Ct. 1913. The Court therefore found that the plaintiff's suit was preempted.

### b. *O'Hara v. General Motors*

Following the U.S. Supreme Court's opinion in *Geier*, a handful of federal and state trial courts found that FVMSS 205 preempts state tort claims arising from a manufacturer's choices of one glazing material over another in motor vehicles.[12]

Only one appellate court in the nation—the United States Court of Appeals for the Fifth Circuit—has directly addressed the preemptive effect of FMVSS 205. And the Fifth Circuit has concluded that FMVSS 205 *does not* preempt state tort claims.[13]

The facts in *O'Hara v. General Motors Corp.*, 508 F.3d 753 (5th Cir.2007) are similar to those in the instant case. As the O'Haras' 2004 Chevrolet Tahoe rolled over in an accident, the plaintiffs' daughter's arm was seriously injured when she was partially ejected through a passenger side window. The plaintiffs claimed that GM's use of tempered glass in the side windows was unreasonably dangerous so as to render the vehicle defective under state tort law, and the plaintiffs argued that "advanced glazing would have decreased the likelihood of passenger ejection." 508 F.3d at 755. The federal district court granted summary judgment to GM, finding that FMVSS 205 preempted the plaintiffs' state law suit.

On appeal, the Court of Appeals reversed the district court's ruling and found the plaintiffs could proceed with their suit. The Court examined *Geier*, and interpreted *Geier* to mean:

> When a federal safety standard deliberately leaves manufacturers with a choice among designated design options *in order to further a federal policy*, a common law rule which would force manufacturers to adopt a particular design option is preempted.

*O'Hara*, 508 F.3d at 759 (emphasis added).

Turning to the record, the *O'Hara* Court examined the text of the regulation and the ANSI standards for glazing materials, and found that FMVSS 205 is "a materials standard that sets a safety 'floor' to ensure that the glazing materials used by manufacturers

---

**12.** *See, e.g.*, *Martinez v. Ford Motor Co.*, 488 F.Supp.2d 1194 (M.D.Fla.2007) (finding FMVSS 205 preempted a state tort action because "the key factor to consider is whether the standard permits the manufacturer to make a choice between available options and whether the design defect claim would foreclose choosing that option."); *Erickson v. Ford Motor Co.*, 2007 WL 2302121 (D.Mont., 2007) (applying *Geier* to hold that plaintiff's design defect theory, as to the use of tempered glass, was preempted); *Samardvich v. General Motors Corp.*, Case No. BC 363661 (Sup.Ct., County of Los Angeles, CA., May 18, 2007) (same); *Rotter v. Ford*, Index No. 11183/03 (N.Y.Sup.Ct. May 18, 2007) (holding that plaintiff's tort action was preempted "in that the use of tempered glass ... is an option included in [Safety Standard 205]"); *Brown v. Land Rover*

*North America, Inc.*, No. 01–1923–G, 2006 WL 2560273 (Sup.Ct., Suffolk County, MassSuper.2006) (relying upon *Geier*, concluded that the state tort claim was preempted because it was "of no consequence" that the case involved FMVSS 205 rather than FMVSS 208).

**13.** Two federal district courts have followed suit. *See, e.g.*, *Spruell v. Ford Motor Co.*, 2008 WL 906648 (W.D.Ark.Apr.1, 2008); *Burns v. Ford Motor Co.*, 2008 WL 222711 (W.D.Ark.Jan.24, 2008). Additionally, one state court has concluded that FMVSS 205 does not preempt a state tort claim over failure to use laminated glass in the side passenger windows of a "motor coach" passenger bus. *MCI Sales and Service, Inc. v. Hinton*, 272 S.W.3d 17 (Tex.App.2008).

meets certain basic requirements." 508 F.3d at 760.

The Court also found that FMVSS 205 differs significantly from FMVSS 208 (the regulation considered in *Geier*) because FMVSS 208 "includes detailed implementation timelines which required manufacturers to introduce airbag technology gradually prior to 1997.... All of these factors—detailed implementation timelines, full vehicle testing procedures and 'options' language—are conspicuously absent from FMVSS 205." 508 F.3d at 760.

The Court further found that FMVSS 205 does not articulate a glazing materials public policy like that relied upon by the U.S. Supreme Court in interpreting FMVSS 208. In *Geier*, the Court "had the benefit of extensive pre-litigation agency statements interpreting FMVSS 208 and making NHTSA's occupant crash protection policy clear," 508 F.3d at 760, and the final rule commentary on the version of FMVSS 208 at issue in *Geier* was 47 pages long and laid "out the agency's concerns regarding public acceptance of airbag technology." 508 F.3d at 761. The *O'Hara* Court noted that the final rule commentary on FMVSS 205 is short—only eight pages—and identifies the public goal behind the update as "increasing the clarity and usability of the standard." 508 F.3d at 761. The Court could find no language "indicating that NHTSA intended to 'preserve the option' of using tempered glass in side windows, or that preserving this option would serve the safety goals of FMVSS 205." *Id.*

The *O'Hara* Court also examined a NHTSA proposal during the 1990s to amend FMVSS 205 to require advanced glazing to prevent occupant ejection during rollover accidents. *See* NHTSA, Rollover Prevention, Advance Notice of Proposed Rulemaking, 57 Fed.Reg. 242 (Jan. 3, 1992). In 2002, NHTSA withdrew its proposal, stating that it declined to require advanced glazing based on "safety and cost concerns." Notice of Withdrawal, 67 Fed.Reg. 41,365, 41,367 (June 18, 2002). Those safety concerns included the agency's desire to investigate and develop standards for new technologies like side airbags, and that advanced glazing carried "drawbacks, including a slightly increased risk of minor neck injuries." *O'Hara*, 508 F.3d at 757. NHTSA stated that it was "more appropriate to devote its research and rulemaking efforts with respect to ejection mitigation to projects other than advanced glazing." 67 Fed.Reg. at 41,367.

The Court in *O'Hara* carefully examined NHTSA's 2002 Notice of Withdrawal, and found no articulable "federal policy regarding advanced glazing in side windows which would be frustrated by the O'Hara's suit." *O'Hara*, 508 F.3d at 761–62. "Overall, the Notice of Withdrawal emphasizes the existence of other promising rollover protection technologies and NHTSA's need to devote resources to developing procedures to test them.... It did not reject advanced glazing as unsafe[.]" 508 F.3d at 762.

The Court then examined a post-*Geier* case on preemption from the U.S. Supreme Court, *Sprietsma v. Mercury Marine*, 537 U.S. 51, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002). In *Sprietsma*, the plaintiff's decedent was killed after falling from a boat and being struck by unguarded propeller blades. The plaintiff brought suit under state law against the engine manufacturer, alleging that the engine was defective and should have had a propeller guard.

The manufacturer in *Sprietsma* argued that the state law action was preempted under *Geier* by federal laws because the U.S. Coast Guard had specifically studied, but decided to "take no regulatory action," with regard to propeller guards. 537 U.S. at 66, 123 S.Ct. 518. In other words, because the federal agency had refused to require propeller guards, the manufacturer argued that a state law ruling holding that propeller guards *were* required would interfere with the agency's policy. *Sprietsma*, 537 U.S. at 64–66, 123 S.Ct. 518. The U.S. Supreme Court disagreed and concluded that the plaintiff's state law action was not preempted, 537 U.S. at 70, 123 S.Ct. 518, holding that the Coast Guard's "decision not to regulate a particular aspect of boat safety is fully consistent with an intent to preserve state regulatory authority pending the adoption of specific federal standards." 537 U.S. at 65, 123 S.Ct. 518. The Court ruled that an agency's decision not to regulate and require a particular form

of safety equipment—like propeller guards— did not "convey an authoritative message of a federal policy" against that form of safety equipment. 537 U.S. at 67, 123 S.Ct. 518.

Taken together, the Court in *O'Hara* found that FMVSS 205 was best understood as a minimum safety standard, and applying *Geier* and *Sprietsma* concluded that the plaintiffs' common law claims were not preempted. 508 F.3d at 763.

### c. *Wyeth v. Levine*

Five days before oral argument in the instant appeal, the United States Supreme Court issued an opinion which revisited its holding in *Geier,* and which revisited the Court's decisions on implied conflict preemption. While the Court's decision, reached with a 6–3 majority, involved a different statute and different regulatory scheme than in the instant case, we believe that the Court's decision markedly clarified its holding in *Geier.*

In *Wyeth v. Levine,* 555 U.S. ——, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009), the Court examined whether a state law failure-to-warn defect suit was preempted by drug regulations adopted under federal law. The drug Phenergan is corrosive and causes irreversible gangrene if it enters a patient's artery. The plaintiff received the drug Phenergan via the IV-push method into her arm, and the drug somehow entered an artery. As a result, the plaintiff's forearm had to be amputated. The plaintiff brought suit against the manufacturer, alleging that the labeling was defective because it failed to instruct clinicians not to use the high-risk IV-push method. A jury found the Phenergan labels to be insufficient and awarded damages.

One of the manufacturer's arguments offered in support of preemption was that the FDA had declared, in its preamble to a 2006 regulation governing the content and format of prescription drug labels, that federal law establishes "both a 'floor' and a 'ceiling,'" so that "FDA approval of labeling ... preempts conflicting or contrary State law." 555 U.S. at ——, 129 S.Ct. at 1200. The regulation also declared that certain state-law actions, such as those involving failure-to-warn claims, "threaten FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs." *Id.* The manufacturer argued that because the FDA is statutorily charged with determining whether drug labels are safe, then state-law judgments on the safety of those labels would subvert the FDA's determinations.

The Supreme Court rejected the manufacturer's preemption argument and concluded that:

> In prior cases, we have given "some weight" to an agency's views about the impact of tort law on federal objectives "when the subject matter is technica[l] and the relevant history and background are complex and extensive." *Geier,* 529 U.S. at 883, 120 S.Ct. 1913. Even in such cases, however, we have not deferred to an agency's *conclusion* that state law is pre-empted.

555 U.S. at ——, 129 S.Ct. at 1201. The Court went on to conclude that the agency's view that its regulations preempted state law were "inherently suspect" and "at odds with what evidence we have of Congress' purposes[.]" 555 U.S. at ——, 129 S.Ct. at 1201. The Court found that the plaintiff's suit was not preempted by federal law.

Important to the case at bar, the Court made clear the basis for its decision in *Geier.* The Court indicated that *Geier* was founded upon the federal agency's explanation of how state law would interfere with its regulation, and how state law would be an obstacle to the accomplishment of a clear federal objective. The Court stated:

> [In *Geier* ], we held that state tort claims premised on Honda's failure to install airbags conflicted with a federal regulation that did not require airbags for all cars. The Department of Transportation (DOT) had promulgated a rule that provided car manufacturers with a range of choices among passive restraint devices. Rejecting an " 'all airbag' " standard, the agency had called for a gradual phase-in of a mix of passive restraints in order to spur technological development and win consumer acceptance. Because the plaintiff's claim was that car manufacturers had a duty to install airbags, it presented an obstacle to

achieving "the variety and mix of devices that the federal regulation sought."

. . . In *Geier*, the DOT conducted a formal rulemaking and then adopted a plan to phase in a mix of passive restraint devices. Examining the rule itself and the DOT's contemporaneous record, which revealed the factors the agency had weighed and the balance it had struck, we determined that state tort suits presented an obstacle to the federal scheme. After conducting our own pre-emption analysis, we considered the agency's explanation of how state law interfered with its regulation, regarding it as further support for our independent conclusion that the plaintiff's tort claim obstructed the federal regime.

555 U.S. at ——, 129 S.Ct. at 1203 (citations omitted).

Justice Thomas, concurring in the judgment in *Wyeth v. Levine* but writing separately from the majority, pinpointed a general concern with the Court's "purposes and objectives" implied conflict preemption jurisprudence. More importantly, Justice Thomas pinpointed a specific concern with the Court's effort in *Geier* to "comb through agency commentaries" to find a congressional objective that was contrary to the specific language of the Safety Act's savings clause. Justice Thomas says that preemptive effect should only be given to congressional intent that is derived directly from properly enacted laws and regulations, and not intent that is mystically divined from letters, briefs, speeches, "congressional and agency musings" or other extraneous sources. As he stated:

> The Supremacy Clause . . . requires that pre-emptive effect be given only those to federal standards and policies that are set forth in, or necessarily follow from, the statutory text that was produced through the constitutionally required bicameral and presentment procedures. . . .

> My review of this Court's broad implied pre-emption precedents, particularly its "purposes and objectives" pre-emption jurisprudence, has increased my concerns that implied pre-emption doctrines have not always been constitutionally applied. Under the vague and "potentially bound-

less" doctrine of "purposes and objectives" pre-emption, *Geier v. American Honda Motor Co.*, 529 U.S. 861, 907, 120 S.Ct. 1913, 146 L.Ed.2d 914 (STEVENS, J., dissenting), for example, the Court has pre-empted state law based on its interpretation of broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law. *See, e.g., . . . Geier, supra,* at 874–883, 120 S.Ct. 1913 (relying on regulatory history, agency comments, and the Government's litigating position to determine that federal law pre-empted state law).

> Congressional and agency musings, however, do not satisfy the Art. I, § 7 requirements for enactment of federal law and, therefore, do not pre-empt state law under the Supremacy Clause. When analyzing the pre-emptive effect of federal statutes or regulations validly promulgated thereunder, "[e]vidence of pre-emptive purpose [must be] sought in the text and structure of the [provision] at issue" to comply with the Constitution.

*Wyeth v. Levine*, 555 U.S. at ——, 129 S.Ct. at 1208 (Thomas, J., concurring) (citations and footnotes omitted).

Justice Thomas went on to levy specific criticism of *Geier*, and to suggest that the Court erred in *Geier* when it strained to divine a congressional or agency intent in favor of preemption that was contrary to the specific "savings clause" language in the Safety Act.

The Court's decision in *Geier* to apply "purposes and objectives" pre-emption based on agency comments, regulatory history, and agency litigating positions was especially flawed, given that it conflicted with the plain statutory text of the saving clause within the Safety Act, which explicitly preserved state common-law actions by providing that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law," 15 U.S.C. § 1397(k) (1988 ed.). In addition, the Court's reliance on its divined purpose of the federal law—to gradually phase in a mix of passive restraint sys-

tems—in order to invalidate a State's imposition of a greater safety standard was contrary to the more general express statutory goal of the Safety Act "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents," 15 U.S.C. § 1381 (1988 ed.). This Court has repeatedly stated that when statutory language is plain, it must be enforced according to its terms. The text in *Geier* "directly addressed the precise question at issue" before the Court, so that should have been "the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." With text that allowed state actions like the one at issue in *Geier,* the Court had no authority to comb through agency commentaries to find a basis for an alternative conclusion.

555 U.S. at ——, 129 S.Ct. at 1215 (Thomas, J., concurring) (citations omitted).

Because the application of the implied preemption doctrine often engenders conclusions that "wander far from the statutory text," Justice Thomas summarized his criticism of the implied conflict preemption doctrine that was the basis for the Court's decision in *Geier* like this:

> Under this approach, the Court routinely invalidates state laws based on perceived conflicts with broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not embodied within the text of federal law.

555 U.S. at ——, 129 S.Ct. at 1215 (Thomas, J., concurring).

### 3. Distilling the various principles of implied conflict preemption

 We now turn again to the parties' arguments, which can now be better viewed in the fluctuating light of the current state of implied conflict preemption jurisprudence.

Mr. Morgan asserts that his glazing defect suit is not preempted by FMVSS 205. He contends that this Court should follow the decisions in *O'Hara v. General Motors Corp.,* supra, and *Sprietsma v. Mercury Marine,* supra, and hold that *Geier v. American Honda* stands for the principle that a common law rule which would force manufacturers to adopt a particular design option is preempted only when a federal safety standard deliberately leaves manufacturers with a choice among designated design options *in order to further a clearly defined federal policy.* Mr. Morgan asserts that FMVSS 205 does not offer manufacturers choices among different glazing options in order to further a clearly defined federal policy.

Instead, Mr. Morgan points out that FMVSS 205 sets forth simple, base line testing guidelines for manufacturers to ensure glazing is safe for use in vehicles, and argues that there is little history and background indicating a congressional intent mandating that manufacturers be permitted to choose glazing materials that are, under state law, unreasonably safe for their intended use. The only public policy clearly expressed in the agency's history when adopting FMVSS 205 is "increasing the clarity and usability of the standard." *O'Hara,* 508 F.3d at 761. Further, as for the NHTSA's decision to consider requiring advanced glazing materials to prevent passenger ejections and later decision not to adopt any new regulations, the plaintiff argues that under *Sprietsma,* the decision not to require advanced glazing materials did not "convey an authoritative message of a federal policy" against state common-law actions mandating that form of safety equipment in motor vehicles.

Ford continues to take the position that the plaintiff's suit is preempted by FMVSS 205. Ford argues that, like the passive restraint options in FMVSS 208 that were considered in *Geier v. American Honda,* FMVSS 205 gives manufacturers a list of optional glazing materials to choose among. Under FMVSS 208, the NHTSA had "rejected a proposed FMVSS 208 'all airbag' standard because of safety concerns (perceived or real) associated with airbags," 529 U.S. at 879, 120 S.Ct. 1913; under FMVSS 205, the agency had rejected a proposed standard requiring advanced glazing in side and rear windows, in part because of safety concerns arising from a slight increase in neck injuries. Ford therefore asserts that this Court should find that the NHTSA "deliberately provided the manufacturer with a range of

choices among different" glazing materials, and that those "choices would bring about a mix of different devices" that should "lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance[.]" *Geier*, 529 U.S. at 875, 120 S.Ct. 1913.

We discern that we are stuck between a rock and a jurisprudential hard place. On the one hand, the U.S. Supreme Court's recent decision in *Wyeth v. Levine* suggests that *Geier* has a limited interpretation—that conflict preemption may only be inferred when there is an extensive contemporaneous history, and detailed agency explanations, showing a federal scheme that would be obstructed by the plaintiff's tort claim. Ford has presented us with little agency history to support a policy indicating that FMVSS 205 was intended to preempt state common law actions, and we have no agency explanations identifying a clear federal objective that would be corrupted by allowing the plaintiff to proceed. And finally, the only other appellate court to directly consider the question—the Fifth Circuit in *O'Hara*—has conclusively ruled that FMVSS 205 establishes only a "floor" for safe glazing equipment, and does not preempt a state court suit seeking to establish a "ceiling." [14]

On the other hand, several state and federal trial courts across the country have ruled that any interpretation of the preemptive effect of FMVSS 205 is controlled by *Geier's* "purposes and objectives" analysis. In agency pronouncements about altering the objectives of FMVSS 205, NHTSA has indicated that glazing other than tempered glass can increase the risk of neck injuries in accidents. Courts have therefore concluded that a state tort law, which imposes liability based upon a manufacturer's choice to use the tempered glass option allowed by FMVSS 205, is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, and therefore is federally preempted.

FMVSS 205 permits the manufacturer to make a choice between available safety options for side-window glass; a design defect claim would foreclose choosing one of those options. We understand that the instant case seeks to impose liability for only *one* of the options allowed by FMVSS 205. But actions in the courts of each of West Virginia's 55 counties could theoretically, one-by-one, eliminate *all* of the options offered under FMVSS 205. In the worse case, regulation by juries could, in a piecemeal fashion, eviscerate the unitary federal regulation and leave manufacturers with no options for glazing materials in vehicle side windows.

We therefore conclude that the circuit court in the instant case did not err in finding that the plaintiff's claim was preempted by FMVSS 205. We believe—as Justice Thomas noted in *Levine*—that *Geier* is flawed because it requires courts to look beyond the properly-enacted federal statute or law and divine an agency's intent from extraneous materials to determine the preemptive effect of a regulation. Still, we are compelled to find that our decision must be controlled by *Geier*, because the NHTSA made a public policy decision to not mandate advanced glazing in side windows because of safety concerns that advanced glazing has a slightly increased risk of neck injuries. *Geier* is, until altered or explicated by the United States Supreme Court, the guiding law of the land.

We therefore find that because the NHTSA gave manufacturers the option to

---

**14.** Further confounding our analysis, we once held in Syllabus Point 3 of *Blankenship v. General Motors Corp.*, 185 W.Va. 350, 406 S.E.2d 781 (1991) that:

In the litigation of vehicle crashworthiness cases under theories of product liability, whenever there is a split of authority in other jurisdictions on an issue about which this court has not yet spoken, the trial court should presume that we would adopt the rule most favorable to the plaintiff.

We also stated in *Blankenship* that:

For there to be a "split of authority," however, the rule urged by the plaintiff must have been pronounced either by the highest court of a state or by a federal circuit court. Neither state intermediate courts of appeals cases nor federal district court cases are sufficiently authoritative to constitute a "split of authority" unless there are so many of them from one jurisdiction over such a long period that it can be reasonably inferred that the highest court of the state or the federal court of appeals acquiesces in the rule.
185 W.Va. at 355 n. 9, 406 S.E.2d at 786 n. 9.

choose to install either tempered glass or laminated glass in side windows of vehicles in FMVSS 205, permitting the plaintiff to proceed with a state tort action would foreclose that choice and would interfere with federal policy.

## IV.

### *Conclusion*

The circuit court's September 17, 2007 order is affirmed.

Affirmed.

Justice DAVIS disqualified.

Judge SWOPE, sitting by temporary assignment.