# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 21, 2010 Session

## CLIFTON LAKE, ET AL. v. THE MEMPHIS LANDSMEN, L.L.C., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-00-6094-00 Div. I,      John R. McCarroll, Jr., Judge**

---

**No. W2009-00526-COA-R3-CV - Filed March 15, 2010**

---

This is an appeal from a jury verdict in a negligence and products liability case. Appellant-Husband was injured when the bus, on which he was a passenger, collided with a concrete truck. Appellant-Husband and Appellant-Wife filed suit against Appellees- the bus manufacturer, the bus owner, and the franchisor. Following trial, the jury found that the Appellants had suffered $8,543,630.00 in damages, but found that none of the Appellees were at fault and apportioned one hundred percent of the fault to a non-party. Appellants appeal. We find that Appellants' claims based on the use of tempered glass in the side windows of the bus, and the lack of passenger seatbelts in the bus are preempted by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §30101 *et seq*. Further, we find that the Appellants failed to present evidence that the use of perimeter seating in the bus caused the injuries. Consequently, we find that the trial court erred in not granting Appellees' motions for directed verdict on the Appellants' claims based on the use of perimeter seating. Reversed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Gary K. Smith and C. Philip M. Campbell, Memphis, Tennessee, for the appellants, Clifton A. Lake and Charleen J. Lake.

Kenneth R. Rudstrom, Memphis, Tennessee and James E. Singer, Altanta, Georgia, for the appellee, The Memphis Landsmen, L.L.C.

Aaron Robert Parker, Molly Glover and Steve N. Snyder, Memphis, Tennessee, for the appellee, Metrotrans Corporation.

James B. Summers, Kirk A. Caraway and Heather W. Fletcher, Memphis, Tennessee, for the appellee, Budget Rent A Car System Inc. f/k/a Cherokee Acquisition Corporation.

## OPINION

Clifton A. Lake ("Mr. Lake") was injured on March 18, 1998, when the bus he was riding was struck by a concrete truck owned by Horn Lake Redi-Mix ("Horn Lake"). Mr. Lake, an environmental lawyer from Chicago, had just flown into Memphis and was riding a bus owned by Memphis Landsmen, L.L.C. on his way to the Budget Rent A Car Memphis location to pick up a rental car. The Budget Rent A Car office was owned and operated by Memphis Landsmen, L.L.C., pursuant to a franchise agreement with Budget Rent A Car System, Inc ("Budget"). When the concrete truck struck the shuttle bus, the shuttle bus spun into a light pole before coming to a stop. At some point, Mr. Lake sustained a significant brain injury. Mr. Lake contends that he was ejected from the bus and hit his head on a concrete curb. The shuttle bus had perimeter seating[1], tempered glass windows[2], and did not have passenger seat belts.

Mr. Lake and his wife, Charleen Lake ("Mrs. Lake"), filed this action on October 18, 2000.[3] The Lakes asserted that Memphis Landsmen, Metrotrans Corporation (the manufacturer of the shuttle bus), and Budget (collectively "Appellees') were negligent in the design of the shuttle bus, and were strictly liable under the law of products liability.[4] Specifically, the Lakes asserted that the shuttle bus was unreasonably dangerous because it did not have seatbelts, had tempered glass windows, and used perimeter seating. The Lakes also asserted a claim against Memphis Landsmen for negligence in driving and operating the

---

[1]Perimeter seating is seating that faces the center of the bus.

[2]Tempered glass is a glass that has been subjected to a heat treatment to make it resistant to breaking. Laminate glass is glass that is made up of two layers of glass, with a plastic layer between the two layers of glass. Glazing, as used in this opinion, refers to different types of glass; i.e. tempered versus laminate. Advanced glazing refers to laminate or glass-plastic glazing. *O'Hara v. General Motors Corp.*, 508 F.3d 753, n.1 (5th Cir. 2007).

[3]The Lakes originally filed this action in federal court in the Western District of Tennessee on March 17, 1999. However, a non-diverse defendant was added and the complaint was dismissed for lack of diversity jurisdiction on October 16, 2000.

[4]This complaint also included a claim against Hehr International, manufacturer of the windows of the bus. Hehr was later granted summary judgment and the Lakes later amended their complaint to remove the claim against Hehr from the complaint.

bus.[5] Metrotrans filed an answer on November 27, 2000, denying that the bus was defective, that Mr. Lake was injured as a result of any defect, and that it was negligent. Metrotrans also raised the defense of comparative fault and preemption. Budget filed an answer on December 2, 2000, also denying all material allegations, and raising comparative fault and preemption as a defense. Memphis Landsmen filed a similar answer on December 15, 2000.

The Lakes filed a motion for partial summary judgment and to strike the Appellees' preemption claim on June 20, 2002. Budget filed a response to the Lakes' Motion and a motion for summary judgment on July 11, 2002, arguing, *inter alia*, preemption. The proceedings were temporarily stayed due to the bankruptcy of Budget. Eventually, in September 2004, Cherokee Acquisition Corporation was substituted for Budget.[6] On October 15, 2004, Memphis Landsmen filed a motion for partial summary judgment. Metrotrans also filed a motion to dismiss or, in the alternative, for partial summary judgment, contending that the Lakes' claims were preempted.

On October 29, 2004, the Lakes filed a motion to amend their complaint. The trial court granted this motion and an amended complaint was filed on December 1, 2004. This amendment supplemented Mrs. Lake's loss of consortium claim and revised the amount of damages sought. It also added a claim of negligence against Budget for its alleged negligence in advising Memphis Landsmen as to the design of the bus. Subsequently, each Appellee filed an answer.

The trial court heard arguments on the preemption issue on November 5, 2005. The Appellees argued that the claims were preempted by the safety standards set by the Department of Transportation through the National Highway Transportation Safety Administration pursuant to the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 *et seq*. On February 2, 2005 the trial court entered an order denying Appellees' motions for summary judgment based on preemption. Appellees filed a motion with the trial court requesting permission to appeal the preemption issue. On May 13, 2005, the trial court entered an order granting the Appellees permission to appeal pursuant to Tenn. R. App. P. 9. This court entered an order on August 4, 2005, denying the request for interlocutory appeal.

Appellees renewed their preemption argument on January 16, 2007, when each filed

---

[5]The Lakes later amended their complaint to assert this claim against Budget also, asserting that Memphis Landsmen was an agent of Budget.

[6]For purposes of clarity, when referring to Budget Rent A Car System, Inc., or Cherokee Acquisition Corporation, we will use the name "Budget."

a renewed motion for summary judgment. On March 7, 2007, the trial court entered an order again denying Appellees' motions based on preemption.

Memphis Landsmen and Budget filed motions for summary judgment on September 24, 2007, asking that the trial court grant them summary judgment on the products liability issue as they were not designers of the bus. The trial court granted the motion as to the products liability claims, but explicitly stated that the negligence claims were not included.

The Lakes filed a second amended complaint on November 27, 2007, with permission of the court. The amendment increased the amount requested in the *ad damnum* clause; removed the claims against and references to Hehr International; and added a claim against Budget based on an alleged agency relationship between Budget and Memphis Landsmen. Budget again renewed its motion for summary judgment based on preemption on July 1, 2008. Memphis Landsmen and Metrotrans joined in this motion. The trial court again denied the Appellees' motion for summary judgment based on preemption and entered an order on August 21, 2008 reflecting this decision.

A jury trial began on August 4, 2008, and lasted for approximately three weeks. At the close of the Lakes' case, each Appellee moved for a directed verdict. The trial court denied the motions at this point in the trial. The Appellees each renewed their motions for directed verdict at the close of all proof and at that time, the trial court granted a directed verdict to Budget on the issue of agency. The trial court also granted a directed verdict as to the issue of negligence by the bus driver, but denied the motions for directed verdict as to all other issues. Following the trial, the jury found that the Lakes had suffered $8,543,630.00 in damages. However, the jury found: (1) that Metrotrans was neither negligent, nor strictly liable, (2) that Memphis Landsmen was not at fault, (3) that Budget was not at fault. Rather, the jury concluded that Horn Lake, a non-party, was one hundred percent at fault for the accident. An order of judgment was entered reflecting the jury's findings on September 11, 2008. The Lakes filed a motion for new trial on October 10, 2008. The trial court entered an order denying the motion for new trial on January 27, 2009. The Lakes timely appealed.

On appeal the Lakes raise the following issues, as we restate them:

1. Whether the trial court erred in denying the Lakes' Motion for New Trial or to Alter or Amend the Judgment?

2. Whether the trial court erred in failing to charge the jury as to the specific effect a finding of fault on the part of non-party, Horn Lake, would have on the ultimate outcome?

3.      Whether the jury's verdict was contrary to the weight of the evidence and the trial court, as "thirteenth juror" should have set the verdict aside?

4.      Whether the trial court erred in permitting Horn Lake to be placed on the verdict form?

5.      Whether the trial court erred in granting partial summary judgment to Memphis Landsmen and Budget on the products liability claim?

6.      Whether the trial court erred in granting Budget a directed verdict on the Lakes' claims of agency?

7.      Whether the trial court erred in admitting evidence of compliance with government standards?

8.      Whether the trial court erred in admitting a letter from former NHTSA general counsel dated August 19, 1992 into evidence?

9.      Whether the trial court erred in denying admission into evidence a letter dated December 17, 1996, from then acting NHTSA chief counsel to Attorney Donna Oshiro of Hawaii?

10.     Whether the trial court erred in denying the Lakes' motion in limine to preclude evidence of Mr. Lake's alcohol use and its possible effects on his brain injury?

11.     Whether the trial court erred in admitting into evidence a series of letters that were made exhibits to Dr. Helge Frank's deposition?

12.     Whether all of the above errors, singularly or in combination, constituted error which materially prejudiced the Lakes and more probably than not affected the judgment or resulted in prejudice to the judicial process?[7]

Metrotrans also raises issues on appeal, restated as follows:

1.      Whether the trial court should have found that the Lakes' claims were preempted by the Federal Motor Vehicle Act?

---

[7] As required under Tenn. R. App. P. 3(e), all issues raised on appeal were first set out in the motion for new trial.

2.	Whether the trial court should have granted a directed verdict against the Lakes' claims based on the use of tempered glass in the windows?

3.	Whether the trial court should have charged the jury as to the rebuttable presumption that a product which complies with government standards is not unreasonably dangerous, as provided in Tenn. Code Ann. § 29-28-104?

Budget also raises an issue on appeal, restated as follows:

1.	Whether the trial court erred in not granting a directed verdict to Budget on the issue of whether Budget owed a legal duty to the Lakes?

*Analysis*

**I. Preemption**

We will first address the issue of whether the Lakes' claims are preempted by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 *et seq.*(the "Safety Act"). The Department of Transportation ("DOT") through the National Highway Transportation Safety Administration ("NHTSA"), pursuant to the DOT's authority under the Safety Act, promulgates Federal Motor Vehicle Safety Standards ("FMVSS"), which regulate the safety of vehicles across the country. It is undisputed that the bus at issue complied with the FMVSS standards. Preemption is a question of law which we review *de novo*. "Our federal system of government recognizes the dual sovereignty of the federal government and the various state governments. The states possess sovereignty within their particular spheres concurrent with the federal government subject only to the limitations imposed by the Supremacy Clause." ***Bellsouth Telecommunications, Inc. v. Greer***, 972 S,W,2d 663, 670 (Tenn. 1997)(citations omitted). The preemption doctrine originated in the Supremacy Clause of the United States Constitution. *U.S. Const.*, Art. VI, cl. 2**; *Bellsouth Telecommunications, Inc. v. Greer***, 972 S.W.2d 663, 670 (Tenn. 1997)(citations omitted). Under the Supremacy Clause if state law conflicts with federal law, it is "'without effect,'" ***Coker v. Purdue Pharma Comp., et al***, No. W2005-02525-COA-R3-CV, 2006 WL 3438082, *5 (Tenn. Ct. App. Nov. 30, 2006)(quoting ***Cipollone v. Liggett Group, Inc.***, 505 U.S. 504, 516 (1992), and therefore displaced by federal law. ***Bellsouth,*** 972 S.W.2d at 672. In other words, it is preempted. However, the courts operate under the assumption that the power of the State is not preempted "unless that was the clear and manifest purpose of Congress." ***Wyeth v. Levine***, - - U.S. - -, 129 S.Ct. 1187, 1195 (2009)(citations omitted). The touchstone issue in all preemption arguments is the intention of Congress. ***Medtronic, Inc., v. Lohr***, 518 U.S. 470, 485 (1996).

Federal preemption of state law can occur either expressly or impliedly. Congress may explicitly preempt state law by stating so within its enactments. **Schneidewind v. ANR Pipeline Co.,** 485 U.S. 293, 299 (1988). However, if federal law does not expressly preempt state law, a state law may still be impliedly preempted. This occurs either (1) when Congress occupies the entire field of law on that issue, or (2) when the state law actually conflicts with the federal law. **Id.** at 300. "Field preemption occurs when a state attempts to regulate conduct 'in a field that Congress intends the federal government to occupy exclusively.'" **Coker,** 2006 WL 3438082 at n.8 (quoting **Hunter Douglas, Inc. v. Harmonic Design, Inc.**, 153 F.3d 1318, 1332 (Fed. Cir. 1998)). The second type of implied preemption occurs when it is impossible to comply with both state and federal law, or when state law stands as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." **Schneidewind,** 485 U.S. at 300 (citations omitted).

Appellees admit, as they must based on **Geier v. American Honda Motor Company, Inc**., 529 U.S. 861 (2000), that express preemption is not an issue in this case. While the Safety Act contains an express preemption provision, 49 U.S.C. § 30103(b), it also contains a savings clause, 49 U.S.C. § 30103(e), which prevents common law actions from being preempted by the Safety Act. **Geier**, 529 U.S. at 868. Therefore, we are only concerned with whether the Lakes' claims are impliedly preempted, and not with express preemption. **Geier**, 529 U.S. at 869. Further, it does not appear that the first type of implied preemption, field preemption, applies. Consequently, we focus on the second type of implied preemption, and must determine whether the Lakes' action actually conflicts with the FMVSS and is, therefore, impliedly preempted. **Id.** at 874. In doing so, we will examine the history and purpose behind the relevant FMVSS. **Id.** at 876-879. While not binding, we may consider the DOT's interpretation of the relevant standards and the impact of tort law on federal objectives. **Wyeth**, 129 S.Ct. At 1201. At the outset of this discussion, we note that these issues have not been addressed by our State and that relatively few courts across the country, both state and federal, have addressed the issue of preemption as it relates to the requirements for seatbelts under FMVSS 208 and the use of tempered glass in side windows under FMVSS 205.

In analyzing the preemption issue, we have reviewed numerous cases where a court ruled on preemption due to the Safety Act and other acts. The landmark case appears to be **Geier v. American Honda**, 529 U.S. 861 (2000). In **Geier**, the United States Supreme Court determined that a no air bag claim was preempted by FMVSS 208. **Id.** In making its decision, the United States Supreme Court determined the objectives of FMVSS 208 by examining statements of the NHTSA and looking at the history behind the adoption and revisions of FMVSS 208. **Id.** at 875-83. The **Geier** Court determined that the NHTSA had rejected an all airbag policy because of safety concerns, and that the NHTSA had implemented its policy to allow manufacturers to gradually implement airbags and other

passive restraint devices. *Id.* Finding that the plaintiff's claim "would stand as an 'obstacle' to the accomplishment of that objective", the *Geier* court held that the plaintiff's claim was preempted. *Id.* at 886.

The United States Supreme Court also addressed the issue of preemption in *Spreitsma v. Mercury Marine*, 537 U.S. 51 (2002); although, the *Spreitsma* case was based on a claim unrelated to the Safety Act. The *Spreitsma* Court held that the Coast Guard's decision not to adopt a regulation requiring propeller guards on motorboats under the Federal Boat Safety Act did not preempt a claim based on lack of propeller guards. *Id.* at 68. The Court noted that while a decision not to regulate an area based on the fact that the area is best left unregulated may have a preemptive effect, that was not the reasoning reflected by the Coast Guard's explanation. *Id.* at 66. The Court explained that the Coast Guard had decided not to adopt a requirement because of the lack of "universally acceptable" propeller guards for all boats, and that the decision does not convey a federal policy against propeller guards. *Id.* at 67. In reaching this decision, the Court compared the boating situation to the situation in *Geier*, and stated that the two scenarios were very different. *Id.* When explaining its decision, the Court pointed to the statements of the two different agencies as to the objective of the policies and the possible preemptive effect. *Id.* at 68.

As recently as last year, the United States Supreme Court again addressed preemption in *Wyeth v. Levine*, - - U.S. - -, 129 S.Ct. 1187 (2009). Although the *Wyeth* case did not involve the Safety Act, the Court reviewed its decision in *Geier* and discussed implied conflict preemption. *Id.* The Court found that a failure to warn claim was not preempted by Federal Drug Administration regulations. The Court noted that, while in the past it gave "some weight" to the agency's views on preemption, it does not defer to an agency's conclusion that state law is preempted. *Id.* at 1201. The Court then went on to distinguish the agency's statements in its case from the agency's statements in *Geier*. *Id.* at 1203.

### a. Glass

Appellees contend that the Lakes' claims based on the use of tempered glass in the side widows are preempted by FMVSS 205. 49 C.F.R. § 571.205. It is undisputed that the windows of the bus at issue complied with FMVSS 205. The Lakes contend that FMVSS 205 only provides a minimum standard and, therefore, a state law tort claim is not preempted. We must determine whether a state law claim based on the use of tempered glass in the side windows of a vehicle, in compliance with federal standards, is an obstacle to the accomplishment or execution of congressional objectives under the Safety Act.

The NHTSA stated that the purpose of FMVSS 205 was to "reduce injuries resulting from impact to glazing surfaces, to ensure a necessary degree of transparency in motor

vehicle windows for driver visibility, and to minimize the possibility of occupants being thrown through the vehicle windows in collisions." 49 C.F.R. § 571.205 S2. The regulation does not directly identify the type of windows allowed, but refers to the standard set by the American National Standards Institute ("ANSI"). The parties, however, do not dispute that the ANSI standards allowed manufacturers to use tempered glass in the side windows.

There are two decisions that directly address and thoroughly discuss the preemptive effect of FMVSS 205: *O'Hara v. General Motors Corp.*, 508 F.3d 753 (5th Cir. 2007) and *Morgan v. Ford Motor Company*, 680 S.E.2d 77 (W.Va. 2009). In *O'Hara,* the Fifth Circuit Court of Appeals held that FMVSS 205 did not preempt a state tort law claim based on the use of tempered glass in side windows. The *O'Hara* court found that FMVSS 205 did not establish a federal policy that would be frustrated by a common law rule requiring glazing. *O'Hara,* 508 F.3d at 758. The *O'Hara* court considered the regulation and its history, and the DOT's and NHTSA's statements construing the regulation. *Id.* at 759. In determining that FMVSS 205 did not preempt the plaintiff's claims, the *O'Hara* court compared FMVSS 205 to FMVSS 208 as considered by the *Geier* court. *Id.* at 760. The *O'Hara* court distinguished the *Geier* air bag issue under FMVSS 208, by finding that FMVSS 208 had detailed timelines for implementation that FMVSS 205 did not; that FMVSS 208 permitted manufacturers to comply by choosing one of the provided options; and that FMVSS 208 had extensive pre-litigation statements on the policy of the regulation while FMVSS 205 had a much smaller amount of statements that did not demonstrate an intent to preserve options. *Id.* at 760-61. The court reviewed the reasoning in *Geier* and *Spreitsma* and found, based on the reasoning in those cases, that the claim at issue would not frustrate a federal policy. *Id.* at 761-63. Based on these findings, the *O'Hara* court concluded that FMVSS 205 was a minimum standard and, therefore, did not preempt common law tort claims. *Id.* at 763.

The Supreme Court of West Virginia also addressed the preemptive effect of FMVSS 205 in *Morgan v. Ford Motor Company*, 680 S.E.2d 77 (W.V. 2009). However, the *Morgan* court disagreed with *O'Hara*, and held that FMVSS 205 did preempt a claim based on the use of tempered glass in side windows. *Id.* In making this decision, the West Virginia court reviewed the decisions and reasoning in *Geier, O'Hara,* and *Wyeth. Id.* at 88-93. The *Morgan* court found that FMVSS 205 permitted a manufacturer to make a choice between safety options and that a claim asserting fault based on the use of a permitted option would foreclose choosing options permitted by Congress. *Id.* The Morgan court noted that the NHTSA had indicated that the use of a glazing[8] besides tempered may increase the risk of neck injuries, and that one type of glazing may protect against one type of safety hazard, but another type would better protect against a different safety hazard. *Id.* at 87. While noting

---

[8]Glazing refers to the different types of glass; i.e. tempered versus laminate.

that there was less policy history behind FMVSS 205 than FMVSS 208, which was at issue in *Geier*, the *Morgan* court found that a claim based on the use of tempered glass in side windows would frustrate a federal policy and is, therefore, preempted. *Id.* at 94-95.

As was the *Morgan* court, this Court is "stuck between a rock and a jurisprudential hard place." *Id.* at 94. We must determine whether the Lakes' claims based on the use of tempered glass in the side windows of the bus would be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299 (1988). The Lakes submit that we should follow the holding and reasoning in *O'Hara*, and its reliance on *Spreitsma.* Respectfully, we disagree with the decision in *O'Hara* and find *Spreitsma* to be distinguishable from the situation before us. From our review of FMVSS 205 and its history, we cannot agree with the *O'Hara* court's conclusion that FMVSS 205 is only a minimum standard and that there is no federal policy which would be frustrated.

FMVSS 205 provides options for the type of glass that can be used in side windows, including tempered glass. The parties do not dispute this. The glazing standards were promulgated in FMVSS 205 by the NHTSA. The stated purpose of the regulation is not only to prevent ejection, but also to prevent injuries resulting from impact with glazing surfaces. 49 C.F.R. § 571.205 S2. In 2003, following a four year review process, NHTSA updated FNVSS 205. *Glazing Materials Final Rule, 68 Fed. Reg. at 43,964-65.* Under both the old and the new versions, laminated glass and tempered glass are both approved for use in side windows. *O'Hara*, 508 F.3d at 756 (citing ANSI/SAR Z26.1-1996 §§ 3.2 (tempered glass). 3.3 (laminated glass), 3.4 (glass-plastic glazing)). Laminated glass is approved for use throughout the vehicle and required in windshields, while tempered glass is only allowed to be used in windows other than the windshield. *Id.* As stated by ANSI, one type of glazing may protect against one safety hazard, but another type of glazing may better protect against a different safety hazard. For example, laminated glass may protect against ejection, but it increases the risk of neck injury from impact with the window; tempered glass better protects against neck injuries from impact, but increases the risk of ejection.

The NHTSA studied the use of advanced glazing[9] in windows in the early 1990's. *O'Hara*, 508 F.3d at 756 (citing *NHTSA, Withdrawal of Advance Notices of Proposed Rulemaking, 67 Fed. Reg. 41, 365, 41,366 (June 18, 2002)*). Following a mandate from Congress, the NHTSA issued notice of proposed rulemaking on both rollover prevention and occupant ejection prevention. *Id.* (citing *NHTSA, Rollover Prevention, Advance Notice of Proposed Rulemaking, 57 Fed. Reg. 242 (Jan. 3, 1992)*). In 2002, NHTSA terminated

[9]Advanced glazing refers to laminated glass and glass-plastic glazing materials, the type of glass which the Lakes suggest should have been used. *O'Hara*, 508 F.3d at n.1.

rulemaking on advanced glazing stating that it would focus on "establishing safety performance requirements for ejection mitigation that will allow vehicle manufacturers the discretion to choose any technology that fulfills the requirements." *NHTSA, Notice of Withdrawal, 67 Fed. Reg. 41,365*. The agency noted that it had concluded in its studies on ejection mitigation that it would not require advanced glazing due to safety and cost concerns. *NHTSA, Notice of Withdrawal, 67 Fed. Reg. 41,365*. The NHTSA explained that the two primary reasons for this conclusion were (1) "the advent of other ejection mitigation systems" and (2) the fact that advanced side glazing increased the risk of neck injury in some cases. *NHTSA, Notice of Withdrawal, 67 Fed. Reg. 41365*. NHTSA also cited an additional reason of the cost associated with modifying vehicles to allow use of windows with advanced glazing. *NHTSA, Notice of Withdrawal, 67 Fed. Reg. 41365*.

Based on the language of FMVSS 205 and the statements by the NHTSA in declining to require advanced glazing, it is clear that there is a federal policy that allows the option to use tempered glass in side windows. We recognize, as did the ***O'Hara*** court, that there are differences between FMVSS 208, as considered by ***Geier***, and FMVSS 205. FMVSS 205 does not have as much legislative history and explanations from the NHTSA as FMVSS 208 does, and there are not detailed timelines gradually implementing the use of a specific type of glass as there were under FMVSS 208 with regard to airbags. Nevertheless, a federal policy exists regarding the glass in side windows. The stated purpose of FMVSS 205 is to prevent both ejection and injuries resulting from impact. Requiring laminated glass in side windows may decrease the risk of ejection, but would increase the risk of injury from impact with the glass. It appears that the NHTSA left the options for glass open so that manufacturers could choose the safety features that best accomplished both purposes. In declining to adopt a specific requirement, the NHTSA intended to allow an option so that manufacturers could choose from other available safety options, such as side curtain airbags, to prevent ejection. This was both a cost decision, as the size of windows on vehicles would have to be modified in order to use advanced glazing, and a safety decision, as studies showed an increased risk of neck injury upon impact with the advanced glazing.

Further, we find ***Spreitsma*** distinguishable. The ***Spreitsma*** Court held that a claim based on the failure to install a propeller guard was not preempted. ***Spreitsma,*** 537 U.S. at 68. Unlike this case, in ***Spreitsma***, there was no regulation addressing the use of propeller guards. As noted by the United States Supreme Court, the Coast Guard, after studying the issue, decided not to adopt a propeller guard requirement because of issues with creating a universal design for all boats. ***Id.*** at 67. In this case, however, there is a regulation concerning windows. The regulation provides manufacturers with the option of using several different types of approved glass. The NHTSA studied the use of advanced glazing in side windows, but declined to adopt a requirement due to safety and cost concerns. The NHTSA could have adopted a requirement for a specific type of glass as there were not concerns

about the ability to create a universal type of glass as there was in *Spreitsma* with the ability to create a universal propeller guard that would work with all boats. Also, there was not a concern about a loss of function or performance on some models of vehicles if the NHTSA adopted a requirement for advanced glazing. In finding that the claim was not preempted, the *Spreitsma* Court noted that there was not a federal policy against the use of propeller guards. *Id.* at 67. While there is not a federal policy against the use of laminated glass in side windows, there is a federal policy that tempered glass should be one of the available safety options. As in *Geier*, a rule requiring laminated glass in side windows, as proposed by the Lakes' claims, would "present an obstacle to the variety and mix of devices that the federal regulation sought" and would, thereby, also serve as "an obstacle to the accomplishment and execution of" a federal policy. *Geier*, 529 U.S. at 881. Accordingly, the Lakes' claims based on the use of tempered glass in the side windows of the bus are preempted.

### b. Seatbelts

We next address Appellees' contention that the Lakes' claims regarding seatbelts are preempted by FMVSS 208. 49 C.F.R. § 571.208. FMVSS 208 does not require seatbelts for passengers on buses with a gross vehicle weight of 10,000 pounds or more. The bus at issue had a gross vehicle weight of over 10,000 pounds. FMVSS 208 only requires seatbelts for drivers. Under FMVSS 208, buses with a gross vehicle weight of less than 10,000 pounds are required to have seat belts for all passengers.

Appellees contend, relying on *Surles v. Greyhound Lines, Inc.,* No. 4:01-CV-00107, 2005 WL 1703153 (E.D. Tenn. July 20, 2005)*,* that a common law duty requiring seat belts, in contravention to the federal regulations, would be in direct conflict with the goals of Congress and the conclusions reached by the NHTSA. Appellees submit that FMVSS 208 is not silent concerning the requirement for passenger seat belts as is demonstrated by the requirement for passenger seat belts on smaller buses and driver seat belts on the bus at issue. Appellees urge this Court to review the interpretation of FMVSS 208 by the NHTSA, and to find that the Lakes' claims based on seatbelts are preempted.

On the other hand, the Lakes contend that their claims based on seat belts are not preempted. The Lakes contend that FMVSS 208 is silent concerning the requirement of seatbelts in the bus at issue and, therefore, based on the reasoning in *Spreitsma*, the claim is not preempted. In their brief, the Lakes attempt to demonstrate how the *Surles* court erred and why this Court should not follow that opinion. Specifically, the Lakes note (1) that *Surles* is an unpublished opinion, (2) that the letter upon which the *Surles* court relied is not binding, (3) that the letter is old and appears to address "large motorcoaches," (3) that the letter erroneously found conflict because FMVSS 208 is silent concerning passenger

seatbelts, and (4) that the letter is addressing the possible preemptive effect of a statute and not a common law tort claim.

Other than the ***Surles*** opinion, the parties were not able to provide this Court with other cases on the issue of the preemptive effect of FMVSS 208 with regard to a claim based on the lack of seatbelts on a bus with a gross vehicle weight greater than 10,000 pounds. Upon our own independent review of this area of law, we have found only a few cases addressing this issue. Several courts have held that FMVSS 208 preempts claims, such as the Lakes', based on the lack of passenger seatbelts in large buses[10]. ***Surles v. Greyhound Lines, Inc.,*** No. 4:01-CV-00107, 2005 WL 1703153 (E.D. Tenn. July 20, 2005)[11]; ***Doomes v. Best Transit Corp. et al.***, 890 N.Y.S.2d 526 (N.Y. App. Div. Dec. 10, 2009); and ***Schunk v. Delaware Transit Corp***., No. 06C-07-008, 2007 WL 1748647 (Del. Super. June 1, 2007). In these cases, the respective courts addressed the issue of whether FMVSS 208 was silent concerning passenger seatbelts. Each of these courts found that there was a federal policy not to require seatbelts; because each of the plaintiffs' claims would conflict with the federal policy, these courts concluded that the plaintiffs' claims were preempted. ***Id.*** Other courts have found that FMVSS 208 does not preempt a claim based on the lack of passenger seatbelts. ***MCI Sales & Service, Inc. v. Hinton***, 272 S.W.3d 17 (TX. Ct. App. 2008). In finding that the claims were not preempted, the Texas Court of Appeals first held that it was not impossible to install passenger seatbelts, while still complying with the federal regulations. The Texas court addresses the issue of frustration of federal purpose, ***Id.*** at 23, and explicitly disagrees with ***Surles***, finding that there was not a federal policy against passenger seat belts in buses. ***Id.*** at 23-28. The ***MCI*** court noted that the ***Surles*** decision incorrectly focused on whether the claim would conflict with the *reasons* for declining to regulate. ***Id.*** at n.6.

We agree with the ***MCI*** court that it is not impossible to install passenger seatbelts and still be in compliance with federal regulations. That finding, however, does not end our analysis on the preemption issue. Instead, we must determine whether the Lakes' claims would be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ***Schneidewind v. ANR Pipeline Co.,*** 485 U.S. 293, 299 (1988). To do this, we will review the regulation itself, along with its history and the agency's interpretation of it. ***Geier***, 529 U.S. at 876-79. We recognize that the NHTSA's statements

---

[10]"Large buses, as used in this opinion, refers to the buses with a gross vehicle weight of 10,000 pounds or more.

[11]We note that the United States 6th Circuit Court of Appeals reviewed the final judgment in ***Surles.*** *See **Surles,*** 474 F.3d 288 (6th Cir. 2007). However, the district court's decision on preemption was not appealed or discussed.

on the reasoning behind the regulation and its possible preemptive effect are not binding; however, we are entitled to give them "some weight." *Wyeth*, 129 S. Ct. at 1201.

First, we will address the language of FMVSS 208. After examining the regulation itself, we find that FMVSS 208 is not silent with regard to passenger seatbelts. FMVSS 208 addresses the necessity of seatbelts in all buses. It requires seatbelts for passengers in smaller buses, but only requires a seatbelt for the driver in larger buses. This does not mean that there is not a federal standard for large buses. If a manufacturer wishes to build a bus without seatbelts, it must build that bus so that its gross vehicle weight is greater than 10,000 pounds.

Next, we must determine what the policy is behind that standard and whether the Lakes' claim would be an obstacle to that policy. We disagree with the *MCI* court's statement that we are not to look at the reasons behind the policy in determining if the claim would frustrate the purpose of the policy. The United States Supreme Court, in determining the preemptive effect of FMVSS 208 on a no-air bag claim, itself looked to the reasons behind the regulation, *Greier,* 529 U.S. at 875-83, and again looked to the Coast Guard's reasons not to adopt a regulation in *Spreistma*, 537 U.S. at 67.

As with the windows, the NHTSA has studied the need for seatbelts in large buses and has decided not to adopt a requirement for seatbelts in these vehicles. In an August 19, 1992 letter, Paul Jackson Rice, chief counsel of the NHTSA, explained, "NHTSA expressly determined that there is not a safety need for safety belts or another type of occupant crash protection at [the passenger] seating positions." (citing 39 Fed. Reg. 27,585). We recognize that the author of this letter is not a safety expert, but is chief legal counsel for the NHTSA. However, as Carl Nash, former NHTSA employee, testified, letters such as these are reviewed by the safety experts at NHTSA and approved before being sent out. Further, we recognize that this letter was addressing whether a proposed state statute would be preempted and therefore we do not rely on the letter for its opinion as to the preemptive effect of FMVSS 208. However, we can rely on this letter for the policy and reasons behind the requirements of FMVSS 208. The NHTSA determined that seat belts should not be required for passengers on large buses due to both safety and cost concerns. We also recognize that Mr. Rice is citing a decision made in 1974. However, FMVSS 208 adopted new seatbelt requirements for buses effective September 1, 1991, and these revisions did not require passenger seatbelts in large buses. Therefore, it would appear that the NHTSA's opinion on safety has not changed. The Lakes' claims directly conflicts with the findings and requirements of the NHTSA. If we were to find that the claims were not preempted, and a jury were to find that the Appellees breached their duty by failing to install seatbelts, then all large buses in Tennessee would be required to have passenger seatbelts–a requirement that is a direct obstacle to the policies and decisions of the NHTSA. Further, such a decision

would, in effect, require large buses across the country to have passenger seatbelts. This would absolutely conflict with Congress' goal of uniformity in the motor vehicle industry. *See* H. R. Rep. No. 1776, at 17 (1996) and S.Rep. No. 1301 (1966). Accordingly, we find that the Lakes' claims against Appellees based on the failure to install passenger seatbelts are preempted by FMVSS 208.

## II. Directed Verdict

Having determined that the Lakes' claims based on the lack of passenger seat belts and the use of tempered glass are preempted, the only remaining claim left for our review is the claim based on the use of perimeter seating. We note that perimeter seating is also covered by the FMVSS and may be preempted. However, none of the parties addressed this issue in their respective briefs, or before the trial court. However, upon review of the record in its entirety, we have determined (based on the following discussion) that it is unnecessary for this Court to address the issue of preemption as it relates to perimeter seating.

We are aware that, with the exception of Metrotrans as to the issue of the windows, and with the exception of Budget as to the issue of duty, none of the parties has raised an issue in this court concerning the trial court's denial of the Appellees' motions for directed verdict. Nevertheless, because we find that the trial court's denial of directed verdicts bears upon our ability to fully adjudicate this case, under the discretion afforded this Court under our appellate and Court rules, we will address the question of whether the trial court erred in denying a directed verdict on the issue of perimeter seating *sua sponte*. Tenn. R. App. 13(b). A trial court's decision to grant a motion for directed verdict involves a question of law. ***Underwood v. HCA Health Servs. Of Tennessee, Inc.***, 892 S.W.2d 423, 425 (Tenn. Ct. App. 1994). On appeal, we apply the same standard used by the trial court when ruling on the motion initially. ***United Brake Sys., Inc. v. Am. Envtl. Prot., Inc.,*** 963 S.W.2d 749, 754 (Tenn. Ct. App. 1997). Accordingly, we do not weigh the evidence or evaluate the credibility of witnesses. ***Id.*** (citing ***Underwood***, 892 S.W.2d at 425). Rather, we consider all of the evidence, taking the strongest legitimate view of it in the non-moving party's favor. ***Eaton v. McLain,*** 891 S.W.2d 587, 590 (Tenn. 1994). The court should grant the motion, "only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." ***Id.***

Following our findings on preemption, the Lakes have both a negligence claim and a products liability claim remaining based on the use of perimeter seating.[12] A negligence

---

[12]At the time of trial, the Lakes' products liability claim was only against Metrotrans, as the trial court had granted summary judgment to Budget and Memphis Landsmen on that issue. We note that the
(continued...)

claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care that amounts to a breach of that duty, (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. **Hale v. Ostrow**, 166 S.W.3d 713, 716 (Tenn. 2005); **Coln v. City of Savannah**, 966 S.W.2d 34, 39 (Tenn. 1998). Likewise, a products liability claim also requires proof of causation, in that the plaintiff "must trace his or her injury to the defect." **Brown v. Crown Equipment Corp.**, 181 S.W.3d 268, 283 (Tenn. 2005). As stated by Professor Prosser:

> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough: and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced it becomes the duty of the court to direct a verdict for the defendant....

**Lindsey v. Miami Development Corp.**, 689 S.W.2d 856, 861 (Tenn. 1985).

Because the Lakes failed to present evidence which "affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the [Appellees] was a cause in fact of the result" the trial court should have granted a directed verdict. Specifically, the Lakes failed to present any evidence upon which a jury could find that Mr. Lake was seated in the bus. This is especially important considering that the record shows that the bus at issue had ceiling hand rails, and that it was common for passengers to ride this bus while standing. After reviewing the entire record and transcript in this case, we can not find any evidence as to whether Mr. Lake was seated. Wayne McCraken ("Mr.McCraken"), an accident reconstruction expert hired by the Lakes, testified on direct examination that for purposes of his study, he assumed Mr. Lake was seated in one of two possible positions on the bus. On cross examination, Mr. McCraken clarified that he did not have personal knowledge as to where Mr. Lake was in the bus or whether he was seated or standing, but was only assuming that Mr. Lake was seated. Carl Nash, a automotive safety expert hired by the Lakes, testified

---

[12](...continued)
Lakes have appealed the trial court's decision to grant summary judgment to Budget and Memphis Landsmen on the products liability issue; however it is not necessary for us to address that issue. Even assuming *arguendo*, that the trial court erred in granting summary judgment to Budget and Memphis Landsmen on the products liability issue, our analysis and findings would not change. The Lakes also, at the time of trial, had a negligence claim based on the negligence of the driver. The trial court granted Appellees a directed verdict on this issue, with the agreement of counsel for the Lakes. Finding no evidence in the record to support this claim, we find that the trial court did not err.

that he assumed Mr. Lake was on the left side of the bus, but did not testify as to whether Mr. Lake was seated or even if he assumed Mr. Lake was seated. The Lakes did not present testimony from any witness to the accident, and Mr. Lake, due to his injury, could not remember anything about the accident or the bus ride. As such, any finding by the jury that Mr. Lake was seated and therefore his injury was caused by the use of perimeter seating, would be mere speculation on the part of the jury. Accordingly, the trial court should have directed a verdict for the Appellees at the close of the Lakes' proof.

## Conclusion

For the foregoing reasons, we find that the trial court erred in failing to find that the Lakes' claims based on the failure to have seatbelts on the bus and the use of tempered glass were preempted. Further, we find that the trial court erred in failing to grant a directed verdict to the Appellees on the issue of perimeter seating. All other issues are pretermitted. Consequently, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to Appellants, Clifton Lake and Charleen Lake, and their surety, and one-half to Appellees, The Memphis Landsmen, L.L.C., Metrotrans Corporation, and Budget Rent A Car System, Inc., f/k/a Cherokee Acquisition Corporation, for which execution may issue if necessary.

_____ J. STEVEN STAFFORD, JUDGE