IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TESSA WARREN, individually and in her capacity as Administratrix of the Estate of Kevin M. Warren, Plaintiff Below, Petitioner**

FILED

**June 11, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-289**      (Cir. Ct. of Logan Cnty. Case No. CC-23-2023-C-122)

**APPALACHIAN POWER COMPANY, Defendant Below, Respondent**

## MEMORANDUM DECISION

In this appeal, Petitioner Tessa Warren, individually and in her capacity as Administratrix of the Estate of Kevin M. Warren, argues that Respondent Appalachian Power Company's ("Appalachian") inactive, unmarked powerlines caused the June 22, 2022, helicopter crash in which Kevin M. Warren died. In its June 18, 2025, order granting Appalachian's motion for summary judgment, the Circuit Court of Logan County found that Ms. Warren's negligence claim against Appalachian failed as a matter of law because Appalachian's powerlines complied with all relevant regulations promulgated under the Federal Aviation Act ("FAA"). Appalachian filed a response in support of the circuit court order.[1] Ms. Warren filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Beginning on June 21, 2022, MARPAT Aviation, LLC, held an event called the "Huey Reunion" at the Logan County Airport in Logan, West Virginia. The event allowed members of the public to take thirty-minute flights in a Vietnam-era UH1B model "Huey" helicopter. During one such flight on June 22, 2022, the helicopter's engine failed. While descending, the helicopter struck inactive, unmarked powerlines 231 feet above a road, then crashed into the road below. Everyone aboard the helicopter died, including Kevin Warren.

---

[1] Ms. Warren is represented by Robert V. Berthold, Jr., Esq., Robert V. Berthold, III, Esq., B. Keith Williams, Esq. (pro hac vice), and James R. Stocks, Esq. (pro hac vice). Appalachian is represented by Christopher D. Smith, Esq., Brian R. Swiger, Esq., Rebecca D. Pomeroy, Esq., and Savanna Jones, Esq.

Family members of several of the victims subsequently filed lawsuits stemming from this incident against Appalachian, the operator of the powerlines prior to their decommission in 1996. Ms. Warren filed her wrongful death action against Appalachian on September 11, 2023,[2] alleging that Appalachian was negligent in failing to mark or remove the inactive powerlines that the helicopter struck during its descent. Ms. Warren alleged that Appalachian breached a common law duty to maintain its powerlines and that it violated Federal Aviation Administration guidance for marking powerlines.

Appalachian filed an answer to the complaint, and the case proceeded to discovery. On April 25, 2025, Appalachian filed its motion for summary judgment. Among other contentions, Appalachian argued that the FAA and the regulations promulgated thereunder by the Federal Aviation Administration preempted the field of aviation safety and set the duty of care applicable in negligence claims related to aviation safety.[3] Appalachian argued that Ms. Warren could not demonstrate that it was negligent based on its failure to mark or remove the inactive powerlines, because those lines existed prior to the FAA's enactment and did not meet the criteria set forth in 14 C.F.R. § 77.17 for an existing object to be considered an "obstruction to air navigation."[4] Specifically, Appalachian stated that it was

---

[2] Ms. Warren also asserted claims against United Affiliates Corporation, MARPAT Aviation, LLC, and Gordon F. Prescott. Her claims against these parties are not at issue in this appeal.

[3] Appalachian also argued that Ms. Warren lacked evidence that Appalachian's retired powerlines caused the helicopter crash, and therefore she could not demonstrate that any breach of a duty by Appalachian proximately caused her damages. Appalachian conceded that Ms. Warren's expert, Donald Sommer, had opined that the powerlines prevented the helicopter's pilot from executing an emergency landing. However, Appalachian argued that Mr. Sommer's opinion was speculative and unsupported, noting that it had a pending motion to exclude his testimony.

[4] This section provides, in relevant part, as follows:

(a) An existing object, including a mobile object, is, and a future object would be an obstruction to air navigation if it is of greater height than any of the following heights or surfaces:

(1) A height of 499 feet [above ground level] at the site of the object.

(2) A height that is 200 feet [above ground level], or above the established airport elevation, whichever is higher, within 3 nautical miles of the established reference point of an airport, excluding heliports, with its longest runway more than 3,200 feet in actual

2

undisputed that the powerlines stood at a lower elevation than two nearby airports, Logan County Airport and the Camp Branch Landing Zone. Appalachian also noted that the United States District Court for the Southern District of West Virginia previously granted summary judgment to Appalachian on this basis in a case filed on behalf of the estate of one of the other deceased passengers. *See Furnas v. Appalachian Power Co.*, No. 2:23-CV-00168, 2024 WL 3996084, at *6 (S.D. W. Va. Aug. 29, 2024) (concluding that the FAA regulations set the standard of care and Appalachian did not breach a duty because the powerlines were not an obstruction under 14 C.F.R. § 77.17).

On May 9, 2025, Ms. Warren filed a response in opposition to Appalachian's motion for summary judgment. However, she did not directly contest Appalachian's argument that the FAA preempted the field of aviation safety and that 14 C.F.R. § 77.17 set the standard of care applicable to her claim. Nor did she point to any facts demonstrating that Appalachian's inactive powerlines were an "obstruction to air navigation" under 14 C.F.R. § 77.17. Instead, Ms. Warren argued that the "case involved a matter broader than violations of FAA regulations, and involved generalized duties of landowners and easement holders to people who traverse upon the land." Ms. Warren did not cite any caselaw in support of this point, instead citing to a brief section of a transcript of a hearing on Appalachian's motion for summary judgment in *Collins v. Appalachian Power Co.*, No.

---

length, and that height increases in the proportion of 100 feet for each additional nautical mile from the airport up to a maximum of 499 feet.

(3) A height within a terminal obstacle clearance area, including an initial approach segment, a departure area, and a circling approach area, which would result in the vertical distance between any point on the object and an established minimum instrument flight altitude within that area or segment to be less than the required obstacle clearance.

(4) A height within an en route obstacle clearance area, including turn and termination areas, of a Federal Airway or approved off-airway route, that would increase the minimum obstacle clearance altitude.

(5) The surface of a takeoff and landing area of an airport or any imaginary surface established under § 77.19, 77.21, or 77.23. However, no part of the takeoff or landing area itself will be considered an obstruction.

14 C.F.R. § 77.17(a) (2011).

CC-23-2022-C-129, one of the other cases stemming from the helicopter crash.[5] Ms. Warren argued that the broader duties at issue included Appalachian's common law duty of care, its duty to maintain its powerlines under the National Electric Safety Code ("NESC"), and its own best practices. Ms. Warren contended that the foreseeability of a helicopter hitting the unmarked powerlines was an issue of material fact. Appalachian filed a reply in support of the motion for summary judgment.

The circuit court held a hearing on Appalachian's motion for summary judgment on May 21, 2025. At the hearing, Appalachian's counsel asserted that the FAA regulations dictated the applicable standard of care and that, regardless, Appalachian had no common law duty because the helicopter crash was not foreseeable. Ms. Warren's counsel argued that the helicopter crash was foreseeable and that Appalachian breached a state law duty. However, her counsel indicated that she had "abandoned preemption."

On June 18, 2025, the circuit court entered its order granting Appalachian's motion for summary judgment. The circuit court found that the FAA and its accompanying regulations preempted the field of aviation safety and that the regulations regarding obstructions established Appalachian's duty in this case. The court found that, because the undisputed facts showed that Appalachian's inactive powerlines were not obstructions under those regulations, Appalachian did not breach any duty with respect to those lines. The circuit court also found that Ms. Warren had waived any argument against preemption because her response to Appalachian's motion for summary judgment "did not contest that the powerline complied with FAA regulations" or "contest [Appalachian]'s preemption argument." The court also determined that Appalachian did not owe the passengers of the helicopter a common law duty because the crash was not foreseeable. Accordingly, the circuit court found that Ms. Warren's negligence claim against Appalachian failed as a matter of law,[6] granted Appalachian's motion for summary judgment, and dismissed the case from its docket. It is from this order that Ms. Warren now appeals.

This Court applies a de novo standard of review to appellate review of orders granting summary judgment. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). This Court

---

[5] In the cited portion of the transcript in the *Collins* case, the circuit court advised that it intended to grant, in part, Appalachian's motion for summary judgment on preemption, as to any claim related to Appalachian's alleged failure to mark the powerlines. However, the circuit court further indicated that it intended to deny Appalachian's motion as to its alleged failure to remove the powerlines, finding that Appalachian might have had a common law duty to remove the line.

[6] The circuit court determined that, because of its dispositive rulings on the issue of Appalachian's duty, it was unnecessary to address Appalachian's argument on proximate cause.

4

applies the same standard for granting summary judgment that a circuit court must apply, that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756). Similarly, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

Ms. Warren raises five assignments of error on appeal. However, we find the preemption issue is dispositive and, thus, we will only address this issue on appeal. In her assignment of error addressing preemption, Ms. Warren argues that the circuit court erred in finding that she waived the issue of preemption and in concluding that the FAA and its regulations preempted the standard of care in this matter. We will address each of these arguments in turn.

Under West Virginia law, a nonmovant bears the burden of responding to a properly supported motion for summary judgment:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56([d]) of the West Virginia Rules of Civil Procedure.

Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). The Supreme Court of Appeals of West Virginia ("SCAWV") has recognized that a nonmovant's failure to make an argument in a response to a properly supported summary judgment motion waives that issue. *See, e.g.*, *Beasley v. Mayflower Vehicle Sys., Inc.*, No. 13-0978, 2014 WL 2681689, at *4 n.7 (W. Va. June 13, 2014) (memorandum decision) (affirming circuit court's determination that petitioner conceded claim by not disputing respondent's motion for summary judgment on that claim); *Fertal v. Campbell*, No. 12-0038, 2013 WL 2157841, at *3 (W. Va. May 17, 2013) (memorandum decision).

Appalachian filed a properly supported motion for summary judgment on the issue of preemption below. Appalachian argued the FAA and its regulations preempted the field of aviation safety, pointing to various persuasive federal authorities, including the Southern District's decision in *Furnas*. Appalachian also cited the specific federal regulation addressing whether an existing object qualifies as an "obstruction to air navigation," 14 C.F.R. § 77.17, and argued that this regulation established the duty applicable to Ms. Warren's negligence claim. Appalachian then identified evidence in the record

5

demonstrating that its powerlines predated the FAA—and its predecessor statute, the Civil Aeronautics Act—and that they did not constitute an obstruction under 14 C.F.R. § 77.17. Appalachian argued that, because its powerlines did not violate the applicable federal regulation defining Appalachian's duty, Ms. Warren's negligence claim failed as a matter of law.

Ms. Warren cites various points in the record where her counsel ostensibly disputed Appalachian's preemption argument below. Most of these citations are to the transcript of the summary judgment hearing in *Collins*, which Ms. Warren attached as an exhibit to various filings in this matter, including her response to Appalachian's motion for summary judgment. Ms. Warren also points to her summary judgment response in this case, but she cites the response's statement of facts, and does not reference any argument addressing Appalachian's motion on the preemption issue. Based upon our review, we find that a discussion of preemption in a related case was insufficient to contest Appalachian's summary judgment arguments on that issue in this matter. We also find that Ms. Warren's conclusory statement in her summary judgment response that the "case involved a matter broader than violations of FAA regulations" was insufficient to preserve an argument against preemption. *See McComas v. Mercer Cnty. Bd. of Educ.*, No. 16-0734, 2017 WL 3866787, at *2 (W. Va. Sept. 5, 2017) (memorandum decision) (finding that a broad, conclusory response to a motion for summary judgment did not preserve more specific arguments on appeal).

Accordingly, we find that Ms. Warren did not respond adequately either to the legal argument that 14 C.F.R. § 77.17 set the standard of care in this matter or to the argument that the undisputed facts demonstrate that Appalachian's powerlines were not an "obstruction" under that regulation. Therefore, we find no error in the circuit court's conclusion that Ms. Warren waived any argument against preemption. However, even if Ms. Warren had preserved her arguments against preemption, she has not shown that the circuit court erred in finding that the FAA and its regulations preempted the field of aviation safety and that 14 C.F.R. § 77.17 defined Appalachian's duty in this case.

The SCAWV has interpreted federal preemption to mean that "[t]he Supremacy Clause of the United States Constitution, Article VI, Clause 2, invalidates state laws that interfere with or are contrary to federal law." Syl. Pt. 1, *Cutright v. Metro. Life Ins. Co.*, 201 W. Va. 50, 491 S.E.2d 308 (1997). Federal law can preempt state law expressly or impliedly. *See* Syl. Pt. 5, *Morgan v. Ford Motor Co.*, 224 W. Va. 62, 680 S.E.2d 77 (2009).[7] There are two types of implied preemption: field preemption and conflict preemption. *See*

---

[7] Express preemption occurs where "Congress, through specific and plain language, acted within constitutional limits and explicitly intended to preempt the specific field covered by state law." *Morgan*, 224 W. Va. at 65, 680 S.E.2d at 80, Syl. Pt. 6. Neither party argues that express preemption applies in this case.

*SWN Prod. Co., LLC v. City of Weirton*, 249 W. Va. 372, 379, 895 S.E.2d 227, 234 (Ct. App. 2023). "Implied field preemption occurs where the scheme of federal regulation is so pervasive that it is reasonable to infer that Congress left no room for the states to supplement it." *Morgan*, 224 W. Va. at 65, 680 S.E.2d at 80, Syl. Pt. 7.[8] "Preemption is a question of law reviewed *de novo*." *Id.* at 65, 680 S.E.2d at 80, Syl. Pt. 1.

The SCAWV has not addressed whether the FAA and its regulations preempt West Virginia law related to aviation safety generally or obstructions to air navigation specifically. However, the federal circuit courts of appeal that have considered FAA preemption have almost uniformly held that Congress intended to preempt the field of aviation safety. In a frequently cited case, the Third Circuit found that "the legislative history of the FAA and its judicial interpretation indicate that Congress's intent was to federally regulate aviation safety" and concluded "that *any* state or territorial standards of care relating to aviation safety are federally preempted." *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 371 (3d Cir. 1999). Most other federal circuit courts have adopted this view or reached a similar conclusion. *See US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1327 (10th Cir. 2010) ("We conclude that the comprehensive regulatory scheme promulgated pursuant to the FAA evidences the intent for federal law to occupy the field of aviation safety exclusively."); *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) (citing *Abdullah* and adopting "the Third Circuit's broad, historical approach to hold that federal law generally establishes the applicable standards of care in the field of aviation safety"); *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 795 (6th Cir. 2005). *But see Pub. Health Tr. of Dade Cnty., Fla. v. Lake Aircraft, Inc.*, 992 F.2d 291, 295 (11th Cir. 1993) (finding that "that Congress did not intend to pre-empt state laws on matters unrelated to airline rates, routes or services").

However, most of these courts have concluded that, while the FAA preempts the field of aviation safety, it only does so as to standards of care. Relying on a provision in the FAA that "[a] remedy under this part is in addition to any other remedies provided by law," 49 U.S.C. § 40120 (1994), federal courts have determined that FAA preemption does not completely bar state tort claims related to aviation safety. *See Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013); *Abdullah*, 181 F.3d at 374-75. Therefore, a plaintiff can still raise a common law negligence claim related to the preempted field of aviation safety, but the FAA and its regulations define the applicable duty. *See Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 125 (3d Cir. 2010) (explaining that for negligence claims in the FAA-preempted field, state law controls all elements other than duty). Accordingly, to prevail on such a negligence claim, a plaintiff must demonstrate that the defendant violated the FAA or its regulations.

---

[8] Implied conflict preemption, which is not at issue, "occurs where compliance with both federal and state regulations is physically impossible, or where the state regulation is an obstacle to the accomplishment or execution of congressional objectives." *Morgan*, 224 W. Va. at 65, 680 S.E.2d at 80, Syl. Pt. 7.

Here, Ms. Warren does not dispute that the FAA generally preempts the standard of care, or duty, applicable to negligence claims related to aviation safety. Rather, she notes that "no controlling authority sets forth that the FAA completely preempts any action having to do with aviation." In support, she cites several cases in which federal courts found that claims related to aviation were not preempted. In *Elassaad*, the Third Circuit found that the FAA did not preempt tort claims related to disembarkation from a plane, explaining that its preemption holding in *Abdullah* was limited to regulations related to "safety while a plane is in the air." *Elassaad*, 613 F.3d at 127-31. In another case Ms. Warren cites, the Third Circuit found that product liability design defect and manufacturing defect claims related to airplane components were not preempted by the FAA. *See Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 696 (3d Cir. 2016). Ms. Warren argues that, like the claims in those cases, her negligence claim falls outside of the field preempted by the FAA, and that she can rely on a breach of a state law duty in support of her claim. We disagree.

Similar to the analysis required of West Virginia courts in *Morgan*, in determining whether a specific claim related to aviation falls within the preempted field, federal courts look at "the pervasiveness of federal regulations in the specific area covered by the tort claim or state law at issue." *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009); *see Sikkelee*, 822 F.3d at 704-07. Undertaking the *Morgan* analysis here, we find no error in the circuit court's conclusion that the FAA preempted the standard of care applicable to Ms. Warren's negligence claim against Appalachian.

Ms. Warren claims that Appalachian was negligent in failing to mark or remove its inactive powerlines, because they were an obstruction to air navigation. Under the FAA, "[t]he United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C § 40103(a) (1994). The FAA also directs the Administrator of the Federal Aviation Administration to "develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft." 49 U.S.C.§ 40103(b)(1) (1994). Pursuant to this authority, the Administrator promulgated 14 C.F.R. § 77, one of the purposes of which is to establish "[t]he standards used to determine obstructions to air navigation." 14 C.F.R. § 77.1(b) (2011). 14 C.F.R. § 77.17 explicitly defines these standards, providing heights relative to airports in the vicinity at which an existing object constitutes an obstruction. In light of Congress's stated intent to regulate airspace and the specific regulations defining obstructions to air navigation, we find that the circuit court did not err in concluding that 14 C.F.R. § 77.17 established the duty applicable to Ms. Warren's negligence claim.

The sole case Ms. Warren cites in which a federal court reached a contrary conclusion on FAA preemption under similar facts, *Griswold v. Alabama Power Co.*, No.

2:20-CV-149-WKW, 2022 WL 37016 (M.D. Ala. Jan. 4, 2022), is unpersuasive.[9] As an initial matter, the district court in *Griswold* determined that it was bound to find that 14 C.F.R. § 77 did not preempt the state standard of care under the Eleventh Circuit's broad ruling limiting FAA preemption in *Public Health Trust of Dade County v. Lake Aircraft, Inc.*, 992 F.2d 291 (11th Cir. 1993). Moreover, we find *Griswold*'s focus on the absence of specific marking requirements for obstructions distinguishable, as the powerlines in the instant case were not an "obstruction" under 14 C.F.R. § 77.17.[10] Additionally, beyond the Southern District's decision in *Furnas* stemming from the same incident at issue in this case, at least one other federal district court addressing similar facts has concluded that 14 C.F.R. § 77 preempts the standard of care. *See McMahon Helicopter Servs., Inc. v. United States*, No. 04-74133, 2006 WL 2130625, at *8 (E.D. Mich. July 28, 2006) ("McMahon cannot argue that the Airport Authority breached a standard of care if the light pole was Part 77 compliant because Part 77 establishes the standard of care."); *see also Columbia Helicopters, Inc. v. U.S. By & Through Bonneville Power Admin. (Dep't of Interior)*, 314 F. Supp. 946, 947 (D. Or. 1969) (finding, without explicitly discussing preemption, that the government was not negligent in failing to mark a powerline that was not an obstruction under 14 C.F.R. § 77); *Leppla v. Sprintcom, Inc.*, 806 N.E.2d 1019, 1024-25 (Ohio Ct. App. 2004) (finding that 14 C.F.R. § 77 preempted the field with respect to lighting requirements for cellular towers).

Accordingly, because we agree that Ms. Warren waived her arguments against preemption and because 14 C.F.R. § 77.17 preempts the standard of care in this case, we find that the circuit court did not err in finding that Ms. Warren's negligence claim failed as a matter of law. Ms. Warren has not argued below or on appeal that Appalachian's powerlines were an obstruction to air navigation under the FAA. Because 14 C.F.R. § 77.17 defines Appalachian's duty in this matter, and because Ms. Warren has not identified any evidence that Appalachian's powerlines violated that section, we conclude that she cannot demonstrate that Appalachian breached a duty. Moreover, because the FAA and its

___

[9] While another case Ms. Warren cites, *Eiserman v. Kentucky Fuel Corp.*, No. CV 5: 14-444-DCR, 2016 WL 1732728 (E.D. Ky. Apr. 29, 2016) involved similar facts, the defendant in that case violated an FAA regulation, and the court did not address preemption.

[10] The district court in *Griswold* recognized that the defendant in that case also argued that the structure at issue was not an obstruction. *See Griswold*, 2022 WL 37016, at *4 n.1. The court determined that this was not dispositive because 14 C.F.R. § 77.5(c)(3) cross references to FAA Advisory Circular 70/7460–1, which includes language indicating that the Federal Aviation Administration can recommend marking or lighting a structure that does not exceed 14 C.F.R. 77 standards. *Id.* at *4-5. However, 14 C.F.R. § 77.5 applies to constructions or alterations, not existing objects. As this case concerns an existing object, rather than a construction or an alteration, 14 C.F.R. § 77.5 is inapplicable.

regulations set the standard of care in this case, Ms. Warren's assertion that her case is "broader" than FAA regulations is meritless and contrary to the basic concept of preemption. Where FAA regulations preempt the standard of care, Ms. Warren cannot simply substitute a state common law or regulatory duty, such as the NESC, for Appalachian's duty to comply with the FAA regulations. Therefore, we find that the circuit court did not err in granting Appalachian's motion for summary judgment.[11]

Based on the foregoing, we affirm the June 18, 2025, order of the Circuit Court of Logan County.

Affirmed.

**ISSUED:** June 11, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

**CONCURRING AND WRITING SEPARATELY:**

Judge S. Ryan White

WHITE, JUDGE, concurring:

I concur in the judgment because Appalachian owed no duty to the occupants of this helicopter under the facts of this case. The accident was not reasonably foreseeable. That conclusion is sufficient to affirm the circuit court's order. I would go no further.

The helicopter struck powerlines that had been inactive for decades. The collision occurred only after an engine failure forced the aircraft into an emergency descent. Nothing in this record suggests Appalachian should have reasonably anticipated that a helicopter would descend into these lines under these circumstances. The chain of events was too remote and too speculative to impose a duty under our negligence law.

---

[11] Ms. Warren's other assignments of error challenge the circuit court's ruling that Appalachian did not owe the passengers of the helicopter a common law duty because the crash was not foreseeable and the circuit court's adoption of a proposed order prepared by Appalachian's counsel. Because we find that the circuit court did not err on the dispositive issue of preemption, we find it unnecessary to address these additional arguments.

Because I would resolve this case on foreseeability grounds, I would not decide whether the Federal Aviation Act ("FAA") preempts the standard of care asserted by petitioner. Courts should avoid deciding broad questions of federal preemption when the case can be resolved on settled principles of state law.

I am particularly reluctant to endorse the majority's discussion of field preemption. The majority relies in part on *McMahon Helicopter Services, Inc. v. United States*, No. 04-74133, 2006 WL 2130625 (E.D. Mich. July 28, 2006). I do not find that decision persuasive.

*McMahon* begins with the proposition that federal regulations define certain structures as obstructions when they exceed specified heights. *Id*. at *2. It then concludes that because a structure falls below those thresholds, compliance with Part 77 necessarily satisfies the standard of care. *Id.* at *8. In other words, because federal law does not regulate below the threshold, no state-law duty may exist below the threshold. That reasoning conflates the existence of federal regulations with the displacement of state law.

The proper inquiry is whether federal regulation is so pervasive that Congress left no room for supplemental state law. *See* Syl. Pt. 7, in part, *Morgan v. Ford Motor Co.*, 224 W. Va. 62, 680 S.E.2d 77 (2009); *see also Hencely v. Fluor Corporation*, 608 U.S. ---, 146 S. Ct. 1086, 1094 (2026); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("But we have held that a few areas, involving 'uniquely federal interests'…are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts ---so-called 'federal common law.'" (internal citations omitted)). Yet Part 77 regulates only a defined category of structures affecting navigable airspace. The FAA chose to regulate objects above certain thresholds. It chose not to regulate those below them. That choice does not necessarily demonstrate an intent to occupy the entire field. If anything, it suggests the opposite.

State-law duties concerning structures that the FAA has determined are not obstructions to navigable airspace do not obviously interfere with the federal government's regulation of aviation. Nor do they prevent the FAA from carrying out its responsibility to manage air traffic and navigable airspace.

Whether federal law ultimately preempts such claims is a question for another day. This case does not require us to answer it. The dispositive issue is foreseeability. Because no reasonable jury could find that this accident was reasonably foreseeable to Appalachian, I concur in the judgment affirming the circuit court's order.